Filed 6/21/12 (S163273 & S179552, both filed 6/21/12, are companion cases;  S163273 is the lead case)

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S163273 |
| v. | ) | |
| | ) | Ct.App. 3 C054365 |
| VICTOR CORREA, | ) | |
| | ) | Sacramento County |
| Defendant and Appellant. | ) | Super. Ct. No. 06F1135 |
| _____ | ) | |

After police found defendant hiding in a closet with a cache of guns, he was convicted of seven counts of being a felon in possession of a firearm.  (Former Pen. Code, § 12021, subd. (a)(1).) [1]  We initially limited review to the question whether imposing sentence on more than one of these counts violated section 654's prohibition against multiple punishment for the same criminal *act*.  We requested supplemental briefing on the question whether section 654 applies to multiple violations of the same criminal *statute*.

_____

[1]    Former Penal Code section 12021, subdivision (a), is now section 29800, subdivision (a), which became effective January 1, 2012.  (Stats. 2010, ch. 711, § 6.)  The Law Revision Commission Comments to section 29800 make clear that the provision was carried over "without substantive change."  (Nonsubstantive Reorganization of Deadly Weapon Statutes (June 2009) 38 Cal. Law Revision Com. Rep. (2009) p. 758.)  We will refer to the provision by its former designation.

Further statutory references are to the Penal Code, unless otherwise indicated.

We hold as follows. By its plain language section 654 does not bar multiple punishment for multiple violations of the same criminal statute. Contrary dictum in a footnote to *Neal v. State of California* (1960) 55 Cal.2d 11, 18, footnote 1 (*Neal*), is disapproved. We do not apply this interpretation to defendant because the law has been unsettled in this area. Even so, defendant's sentence did not violate section 654 because specific statutory authority makes possession of each weapon a separate offense. (Former § 12001, subd. (k).)[2]

## I. FACTUAL AND PROCEDURAL BACKGROUND[3]

In response to a report that someone was taking firearms into a house, Officer Kevin Howland went to the residence of defendant's parents. Howland saw defendant get out of a car and walk into the garage. The car had been reported stolen. Other people left the house and were detained, but defendant barricaded himself inside. After firing tear gas into the house, a SWAT team entered. Defendant had hidden in a closet under some stairs and was stuck. Officers had to break open the back wall of the closet to extricate him. Seven rifles and shotguns of varying calibers and gauges were found in the closet with him. Ammunition fitting the weapons was found in the closet, an upstairs

---

[2] Former section 12001, subdivision (k), is now section 23510. Again, the Law Revision Commission Comments make clear that the provision was carried over "without substantive change." (Nonsubstantive Reorganization of Deadly Weapon Statutes (June 2009) 38 Cal. Law Revision Com. Rep., *supra*, at p. 479.) We will refer to the provision by its former designation.

[3] Because of the narrow legal question under review, we have condensed the factual background in the Court of Appeal's opinion. We accept the Court of Appeal's statement of facts unless a party calls the Court of Appeal's attention to any alleged omission or misstatement, in a petition for rehearing. (Cal. Rules of Court, rule 8.500(c)(2).) Neither party here sought rehearing.

bedroom, and the garage. A neighbor testified that she had seen defendant with a shotgun or rifle, and that she had also seen a handgun in his bedroom.

A jury convicted defendant of seven counts of being a felon in possession of a firearm[4] and one count of receiving a stolen vehicle.[5] Defendant waived his right to a jury trial on allegations of prior convictions. The court found that he had two felony convictions for forcible sodomy,[6] which qualified him for life sentencing under the three strikes law.[7] It sentenced him to eight consecutive terms of 25 years to life, one for each firearm possession and one for receiving a stolen vehicle.

The Court of Appeal affirmed the judgment. We affirm the judgment of the Court of Appeal.

## II. DISCUSSION

Section 654, subdivision (a), provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."

In *Neal*, *supra*, 55 Cal.2d 11, the court added a "gloss" to section 654 that has been a subject of continuing controversy and given rise to much confusion. Neal threw gasoline into a couple's bedroom and ignited it, intending to kill the

---

[4]    Former section 12021, subdivision (a)(1). The jury did not convict defendant of possessing two other guns found elsewhere in the house.

[5]    Section 496d, subdivision (a).

[6]    Section 286, subdivision (d).

[7]    Section 1170.12, subdivision (c)(2)(A)(ii).

3

occupants. The victims were severely burned, but survived. Convicted of arson and two counts of attempted murder, Neal contended he could not be punished for the arson. (*Neal*, at p. 15.)

Even though section 654 refers to an "act or omission," the *Neal* court opined that "[f]ew if any crimes . . . are the result of a single physical act." (*Neal*, *supra*, 55 Cal.2d at p. 19.) Accordingly, the relevant question is typically whether a defendant's " 'course of conduct . . . comprised a divisible transaction which could be punished under more than one statute within the meaning of section 654.' " (*Ibid.*, quoting *People v. Brown* (1958) 49 Cal.2d 577, 591.) To resolve this question, the *Neal* court announced the following test: "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*Neal*, at p. 19.)

In *People v. Latimer* (1993) 5 Cal.4th 1203 (*Latimer*), this court criticized *Neal*'s analysis, but declined the Attorney General's invitation to reconsider the *Neal* "gloss." "While sympathetic with some of the Attorney General's arguments, we conclude that we may not now overrule *Neal*, *supra*, 55 Cal.2d 11, and its progeny. For three decades, the Legislature has enacted new sentencing statutes in light of those cases. Although the Legislature has not expressly ratified the *Neal* rule, it has impliedly accepted it. In some respects, the sentencing structure we have today would be different but for the *Neal* line of cases. To overrule them now would result in a sentencing scheme intended by no one. Principles of stare decisis compel us to adhere to the *Neal* test. Any changes must be made by the Legislature, not this court." (*Latimer,* at pp. 1205-1206.)

4

The court stressed, however, that "nothing we say in this opinion is intended to cast doubt on any of the later judicial limitations of the *Neal* rule." (*Latimer*, *supra*, 5 Cal.4th at p. 1216.)

In order to parse out the applicable precedent and to identify the flaw in the *Neal* footnote, it is important to distinguish among three related but distinct concepts: multiple prosecution, multiple conviction, and multiple punishment.

Section 654, subdivision (a), addresses multiple punishment and multiple prosecution. The multiple prosecution bar, set out in the last sentence of subdivision (a), is a " 'procedural safeguard against harassment and is not necessarily related to the punishment to be imposed . . . .' " (*People v. Britt* (2004) 32 Cal.4th 944, 950 (*Britt*), quoting *Neal*, *supra*, 55 Cal.2d 11, 21.) This case involves only the multiple punishment aspect of section 654.

It is also important to recognize that section 654 concerns only multiple punishment, not multiple convictions. "It is well settled that section 654 protects against multiple punishment, not multiple conviction.[8] (*People v. McFarland* (1962) 58 Cal.2d 748, 762.)" (*People v. Harrison* (1989) 48 Cal.3d 321, 335 (*Harrison*).) As we explained in *People v. Reed* (2006) 38 Cal.4th 1224, 1226-1227, "In general, a person may be *convicted* of, although not *punished* for, more than one crime arising out of the same act or course of conduct. 'In California, a single act or course of conduct by a defendant can lead to convictions "of *any number* of the offenses charged." (§ 954, italics added; *People v. Ortega* (1998) 19 Cal.4th 686, 692.)' (*People v. Montoya* (2004) 33 Cal.4th 1031, 1034.)

---

**8**      As we explain in footnote 9, *post*, at the time that *Neal*, *supra*, 55 Cal.2d 11, was decided, courts that found section 654 applicable generally set aside the conviction, and not merely the punishment. (See *People v. McFarland* (1962) 58 Cal.2d 748, 763 (*McFarland*).)

Section 954 generally permits multiple conviction. Section 654 is its counterpart concerning punishment. It prohibits multiple punishment for the same 'act or omission.' When section 954 permits multiple conviction, but section 654 prohibits multiple punishment, the trial court must stay execution of sentence on the convictions for which multiple punishment is prohibited. (*People v. Ortega*, *supra*, at p. 692; *People v. Pearson* (1986) 42 Cal.3d 351, 359–360.) . . . [¶] A judicially created exception to the general rule permitting multiple conviction 'prohibits multiple convictions based on necessarily included offenses.' (*People v. Montoya*, *supra*, 33 Cal.4th at p. 1034.) '[I]f a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former.' (*People v. Lopez* (1998) 19 Cal.4th 282, 288.)"

This case involves multiple violations of the *same* statute, while the express language of section 654 applies to an act that is punishable in *different* ways by *different* provisions of law. That language notwithstanding, in the *Neal* footnote the majority remarked: "Although section 654 does not expressly preclude double punishment when an act gives rise to *more than one violation of the same Penal Code section* or to multiple violations of the criminal provisions of other codes, it is settled that *the basic principle it enunciates precludes double punishment in such cases also.* (*People v. Brown*, 49 Cal.2d 577, 591; see *People v. Roberts*, 40 Cal.2d 483, 491; *People v. Clemett*, 208 Cal. 142, 144; *People v. Nor Woods*, 37 Cal.2d 584, 586.)" (*Neal*, *supra*, 55 Cal.2d at p. 18, fn. 1, italics added.)

We asked the parties to file supplemental briefs addressing the following questions regarding this dictum.

(1) Does the authority cited in this footnote support the italicized language?

6

(2)  In light of the language and purpose of section 654, is it reasonable to apply it to bar multiple punishment for multiple violations of the same provision of law?

(3)  Should this court reconsider footnote 1 from *Neal*, *supra*, 55 Cal.2d at page 18, and instead conclude that Penal Code section 654 does not govern multiple punishment for violations of the same provision of law?

In his supplemental letter brief, defendant raised two related issues.  As explained below, although the *Neal* footnote was dictum, subsequent decisions of the Court of Appeal have applied section 654 to multiple punishment for violations of the same provision of law.  The question arises whether stare decisis and legislative acceptance compel us to continue to follow the *Neal* footnote, just as they required us to follow the *Neal* gloss in *Latimer*, *supra*, 5 Cal.4th 1203.  Further, may a contrary rule be applied to defendant without violating the due process and ex post facto clauses of the United States Constitution?

**A.  Reconsideration of the *Neal* Footnote**

(1)

We conclude that, in addition to being dictum, the *Neal* footnote is an incorrect statement of law, unsupported by the authority it cites.  The cases relied upon do not stand for the proposition that the "basic principle" enunciated in section 654 "preclude[s] double punishment when an act gives rise to more than one violation of the same Penal Code section . . . ."  (*Neal*, *supra*, 55 Cal.2d 11, 18, fn 1.)  Three of the four cases cited in the *Neal* footnote involved multiple *convictions* that were held to be improper without any reliance on section 654. [9]

---

[9]  As we have noted, at the time that *Neal*, *supra*, 55 Cal.2d 11, was decided, courts that found section 654 applicable generally set aside the conviction, and not merely the punishment.  (*McFarland*, *supra*, 58 Cal.2d 748, 763.)  The now-familiar procedure of staying the punishment while preserving the conviction did

*(footnote continued on next page)*

Those three cases, discussed below, are *People v. Clemett* (1929) 208 Cal. 142 (*Clemett*); *People v. Nor Woods* (1951) 37 Cal.2d 584 (*Nor Woods*); and *People v. Roberts* (1953) 40 Cal.2d 483 (*Roberts*). By contrast, there is no suggestion here that multiple *convictions* were improper. Defendant was found hiding under the stairs with seven guns. He was convicted of seven counts of being a felon in possession of a firearm. (Former § 12021, subd. (a)(1).) Former section 12001, subdivision (k), provided that the possession of "each firearm . . . shall constitute a distinct and separate offense" under, among other provisions, section 12021.

*Clemett*, s*upra*, 208 Cal. 142, involved a prosecution under a statute that prohibited possession or operation of a still; the defendant was convicted of one count of possessing and one count of operating the same still, on the same day. This court granted review "solely for the reason that we entertained grave doubt as to whether two separate crimes had been committed . . . ." (*Id.* at p. 143.) "As early as *People v. Shotwell*, 27 Cal. 394, and *People v. Frank*, 28 Cal. 507, it was held that co-operative acts constituting but one offense when committed by the same person at the same time, when combined, charge but one crime and but one punishment can be inflicted as one offense. 'Where a statute makes two or more distinct acts connected with the same transaction indictable, each one of which

---

*(footnote continued from previous page)*

not develop until later. (This historical development is reviewed in *People v. Benson* (1998) 18 Cal.4th 24, 38-40 (dis. opn. of Chin, J.).) Indeed, after it found that section 654 prohibited multiple punishment for arson in addition to two attempted murders, the *Neal* court set aside the arson conviction; it did not merely prohibit separate punishment. (*Neal*, *supra*, 55 Cal.2d at p. 21.) Thus, at that time, the question whether multiple conviction was permitted was essentially the same as the question whether section 654 prohibited multiple punishment. Accordingly, it is somewhat understandable that the *Neal* footnote relied on cases involving the question of multiple conviction.

8

may be considered as representing a stage in the same offense, it has in many cases been ruled they may be coupled in one count. Thus, setting up a gaming table, it has been said, may be an entire offense; keeping a gaming table and inducing others to bet upon it, may also constitute a distinct offense; for either, unconnected with the other, an indictment will lie. Yet when both are perpetrated by the same person, at the same time, they constitute but one offense, for which one count is sufficient, and for which but one penalty can be inflicted.' (Wharton on Criminal Law, approved in *People v. Shotwell*, 27 Cal. 394.) Again, in *People v. Frank*, 28 Cal. 507, it was said: [¶] 'The indictment is good whether it be regarded as containing two counts or but one. Where, in defining an offense, a statute enumerates a series of acts, either of which separately, or all together, may constitute the offense, all such acts may be charged in a single count, for the reason that notwithstanding each act may by itself constitute the offense, all of them together do no more, and likewise constitute but one and the same offense.' " (*Clemett*, at pp. 144-145.)

Applying this line of authority, the *Clemett* court reversed the possession conviction, reasoning that "the legislature prescribed but one punishment for a violation of said act . . . ." (*Clemett*, *supra*, 208 Cal. at p. 147.) "Clearly the possession and control period is covered by the period during which the defendant operated said still. The defendant may have had a still in his possession or under his control without operating the same, but he could not have operated it without having it under his control and in his constructive possession." (*Id*. at p. 146.)

In *Nor Woods*, *supra*, 37 Cal.2d 584, a used car dealer was convicted of two counts of grand theft for taking both a 1946 Ford and some cash in exchange for a 1949 Ford, then failing to deliver the newer car or to return the trade-in and money. This court reversed one of the convictions. "It is unnecessary to determine under what circumstances the taking of different property from the

9

same person at different times may constitute one or more thefts. [Citation.] In the present case both the car and the money were taken at the same time as part of a single transaction whereby defendant defrauded [the victim] of the purchase price of the 1949 Ford. There was, accordingly, only one theft, and the fact that the sentences were ordered to run concurrently does not cure the error. [Citations.]" (*Id*. at pp. 586-587.)

*Roberts*, *supra*, 40 Cal.2d 483, was a prosecution under Health and Safety Code section 11500, which read: " 'Except as otherwise provided in this division, no person shall possess, transport, sell, furnish, administer or give away, or offer to transport, sell, furnish, administer, or give away, or attempt to transport a narcotic except upon the written prescription of a physician . . . .' " (*Roberts*, at p. 486.) The defendant and a confederate were convicted of conspiracy to violate the statute. They were also convicted of violating the statute in three different ways on the same occasion by illegally transporting, selling, and possessing heroin. The court reversed the transportation and possession convictions. "The three acts are charged and adjudged as separate crimes. However, 'cooperative acts constituting but one offense when committed by the same person at the same time, when combined, charge but one crime and but one punishment can be inflicted.' (*People v. Clemett* (1929), 208 Cal. 142, 144; see, also, *People v. Knowle*s (1950), 35 Cal.2d 175, 187.) The present case [*Roberts*] resembles the Clemett case in that the only possession and transportation of heroin shown were those necessarily incident to its sale. And as in the Clemett case (p. 150 of 208 Cal.) the error can be corrected by this court." (*Roberts*, at p. 491.)

While these cases all tangentially refer to punishment, they do so because each held that the defendants were wrongfully *convicted* of multiple offenses when only a single crime was committed. Naturally, because the convictions failed, any punishment based on them would also be set aside.

10

The fourth case cited in the *Neal* footnote is *People v. Brown* (1958) 49 Cal.2d 577. There the court considered the application of section 654 to one act that violated two *different* Penal Code provisions. The defendant killed Lucy Sanchez in the course of an unlawful abortion and was convicted of both second degree murder and abortion. Relying on section 654, this court reversed the abortion conviction. "It is manifest from the evidence that defendant committed against Lucy only one criminal act, that is, the insertion of a blunt instrument in combination with the injection of a solution." (*Brown*, at p. 590.) *People v. Coltrin* (1936) 5 Cal.2d 649, another abortion/murder case, was overruled insofar as it held, contrary to section 654, that a person could be "twice punished for one act." (*Brown*, at p. 593.) Thus, *Brown* was a straightforward application of section 654's language and presaged the holding in *Neal*.

(2)

Both the language and purpose of section 654 counsel against applying it to bar multiple punishment for violations of the *same* provision of law. Certainly the language of section 654 does not support such an application. By its terms section 654 applies only to "[a]n act or omission that is punishable in different ways by *different* provisions of law . . . ." (Italics added.)

Nor does the purpose of section 654 support a bar to multiple punishment for multiple violations of the same provision of law. As we have said frequently, the purpose of section 654 is to ensure that a defendant's punishment will be commensurate with his culpability. (See, e.g., *People v. Oates* (2004) 32 Cal.4th 1048, 1063 (*Oates*); *Latimer*, *supra*, 5 Cal.4th at p. 1211; *People v. Perez* (1979) 23 Cal.3d 545, 550-551 (*Perez*); *Neal*, *supra*, 55 Cal.2d at p. 20.) We have also observed that "[t]he *Neal* test does not, however, so ensure. A person who commits separate, factually distinct, crimes, even with only one ultimate intent and objective, is more culpable than the person who commits only one crime in pursuit

11

of the same intent and objective." (*Latimer*, *supra*, 5 Cal.4th at p. 1211.)  For the reasons we gave in *Latimer*, discussed above, we have not repudiated the long-standing holding of *Neal*.  However, we here limit, rather than expand, its incongruity by applying section 654 according to its terms, that is, to "[a]n act or omission that is punishable in different ways by different provisions of law."

In other contexts, we have declined to extend section 654's reach and bar multiple punishment under the same provision of law.  For example, section 654 does not apply to crimes of violence against multiple victims.  (E.g., *Oates*, *supra*, 32 Cal.4th at p. 1063.)[10]  The reason is that "[a] defendant who commits an act of violence with intent to harm more than one person or by means likely to cause harm to several persons is more culpable than a defendant who harms only one person." (*Oates*, at p. 1063.)

Similarly, we have declined to apply section 654 where the defendant has committed multiple violations of the same provision of law prohibiting sexual assaults.  In *Harrison, supra,* 48 Cal.3d 321, the defendant broke into the victim's home and committed three separate acts of digital penetration.  After each penetration the victim was able to pull away.  Twice the defendant was able to overpower her and penetrate her again.  After the third assault she was able to retreat to a bathroom and lock the door.  The entire episode lasted seven to 10 minutes.  (*Id*. at pp. 325-326.)

First, the *Harrison* court found that the defendant was properly *convicted* of three separate counts of sexual penetration by a foreign object.  (*Harrison*, *supra*, 48 Cal.3d 321, 327-334.)  It then considered the trial court's imposition of separate

---

[10]    Section 654 is not applicable where " 'one act has two results each of which is an act of violence against the person of a separate individual.' " (*Neal*, *supra*, 55 Cal.2d at pp. 20-21.)

consecutive sentences for each sexual offense. It held that section 654 did not bar separate penalties for each assault, even though they involved violations of the same code section and occurred during a brief period. It relied on the holding of *Perez*, *supra*, 23 Cal.3d at page 553, that a " 'defendant who attempts to achieve sexual gratification by committing a number of base criminal acts on his victim is substantially more culpable than a defendant who commits only one such act.' " (*Harrison*, *supra*, at p. 336.)

The *Harrison* court rejected the defendant's argument that under section 654 he could not receive multiple punishments because his crimes involved identical offenses. The court explained that to apply section 654 in that way "would mean that 'once a [defendant] has committed one particular sexual crime against a victim he may thereafter with impunity repeat his offense,' so long as he does not direct attention to another place on the victim's body, or significantly delay in between each offense. [Citation.] However, it is defendant's intent to commit a number of separate base criminal acts upon his victim, and not the precise code section under which he is thereafter convicted, which renders section 654 inapplicable." (*Harrison*, *supra*, 48 Cal.3d at pp. 337-338.)

Similarly, a felon who possesses several firearms is more culpable than one who possesses a single weapon. The purpose of The Dangerous Weapons Control Law,[11] of which former section 12021 was a part, is to protect the public by denying firearms to felons, who are considered more likely to commit crimes with them. (*People v. Bell* (1989) 49 Cal.3d 502, 544 (*Bell*).) The Legislature has made it clear that the magnitude of a felon's culpability depends on the number of

---

[11] Former section 12000 et seq. (Enacted by Stats. 1953, ch. 36, § 1, p. 653; repealed by Stats. 2010, ch. 711, § 4, operative Jan. 1, 2012.)

weapons possessed. As noted, former section 12001, subdivision (k) specified that the possession of "each firearm . . . shall constitute a distinct and separate offense" under, among other provisions, former section 12021.**12** An analogy to our observation in *Harrison* is apt. To apply the section 654 bar to punishment for multiple violations of the weapons possession statute here would mean that once a felon had acquired one firearm " 'he may thereafter with impunity' "**13** acquire as many guns as he wishes, at least as long as he keeps his arsenal in one place and is arrested while possessing all of its contents. As we explain below, such a result clearly contravenes express legislative intent.

(3)

Reconsidering the *Neal* footnote is a departure. Some Court of Appeal decisions have expressly relied on it in applying section 654 to multiple punishment for violations of the same provision of law. (See *People v. Davey* (2005) 133 Cal.App.4th 384 (*Davey*); *People v. Hall* (2000) 83 Cal.App.4th 1084 (*Hall*).)

In *Davey*, *supra*, 133 Cal.App.4th 384, the Court of Appeal held that under section 654, "a single act of indecent exposure constitutes only one crime for the purpose of sentencing, regardless of the number of people who witness it." (*Davey*, at p. 387.) The court further held that "indecent exposure is not a violent

---

**12** Former section 12001, subdivision (k), provided: "For purposes of Sections 12021 [and other enumerated sections of the Pen. Code and Welf. & Inst. Code], notwithstanding the fact that the term 'any firearm' may be used in those sections, each firearm . . . shall constitute a distinct and separate offense under those sections."

New section 23510 provides "notwithstanding the fact that the term 'any firearm' may be used in [the specified] sections, each firearm . . . constitutes a distinct and separate offense under those sections."

**13** *Harrison*, *supra*, 48 Cal.3d at page 337.

crime for the purpose of the multiple-victim exception under section 654." (*Id.* at p. 392.) Citing the *Neal* footnote, the court said, "Although section 654 by its terms bars only multiple punishment for a single act violating more than one statute, it has long been interpreted also to preclude multiple punishment for more than one violation of a single Penal Code section, if the violations all arise out of a single criminal act." (*Davey*, at p. 389.)

In *Hall*, *supra*, 83 Cal.App.4th 1084, the issue was "whether a single act of exhibiting a firearm in a threatening manner in the immediate presence of several peace officers in violation of section 417, subdivision (c), is punishable for as many times as there are peace officers present pursuant to the multiple-victim exception to section 654. We conclude that the plain language of section 654, its purpose, and the case law construing it compel a single punishment for a single act of exhibiting a firearm in violation of section 417, subdivision (c), regardless of the number of peace officers present. The crime of exhibiting a firearm 'in the immediate presence of a peace officer' in violation of section 417, subdivision (c), is, by its very definition, not committed upon a peace officer, but only in the presence of a peace officer. The multiple-victim exception to section 654 requires multiple victims, not multiple observers. Only once the exhibition of the firearm becomes an assault may the observers become victims, and may a single act warrant multiple punishment." (*Id*. at pp. 1086-1087.) Relying on the *Neal* footnote, the Court of Appeal stayed sentences on two of the three brandishing convictions. (*Id*. at pp. 1088, 1096-1097.)[14]

---

[14]    In *Britt*, *supra*, 32 Cal.4th 944, this court did not rely upon or cite the *Neal* footnote. However, the court did hold that section 654 barred punishing the defendant for both of his violations of the same statute. The defendant, a registered sex offender, was convicted in Sacramento County for failing to notify authorities there that he had moved to El Dorado County. (§ 290, subd.(f)(1).)

*(footnote continued on next page)*

15

However, having reconsidered the *Neal* footnote, we conclude that section 654 does not bar multiple punishment for violations of the same provision of law. In doing so we reject dictum, correct a legally unsupported principle, are more consistent with our later jurisprudence, and conform to the plain language of the statute. The stare decisis considerations that led to our policy decision in *Latimer*, not to repudiate the *Neal* holding, do not weigh as heavily with regard to the *Neal* footnote, particularly in light of its inconsistency with the text of the statute. The *Neal* footnote has caused great confusion since its penning and is plainly obiter dictum. In these circumstances, it is for this court, not the Legislature, to clarify our own jurisprudence.

(4)

Defendant contends that if we hold section 654 does not govern multiple punishment for violations of the same provision of law, we may apply the new rule prospectively only. We agree.

---

*(footnote continued from previous page)*

Later, he was also convicted in El Dorado County for failing to notify authorities in that county of the move. We held that prosecuting the El Dorado County action after the defendant had been convicted in Sacramento County violated section 654's bar on multiple *prosecutions*. We also held that section 654's ban on multiple punishment was violated because the defendant had a single objective: avoiding police surveillance. "Accordingly, we conclude that a person subject to section 290's reporting requirements who changes residence a single time within California without reporting to any law enforcement agency, and who thus violates both subdivisions (a) and (f) of section 290, may be punished for one of those crimes, but not both." (*Britt*, at pp. 953-954.) The court noted that "[t]his case involves a single move directly from one jurisdiction to another. We express no opinion on how section 654 would apply to other facts, such as multiple moves or the maintenance of multiple residences." (*Id.* at p. 951, fn. 4.)

16

The due process clause is a limitation on the powers of the legislature and does not of its own force apply to the judicial branch of government. However, the principle on which the clause is based, that a person has a right to fair warning of the conduct which will give rise to criminal penalties, is fundamental to our concept of constitutional liberty. As such, that right is protected against judicial action by the due process clause of the Fourteenth Amendment to the United States Constitution. (*Marks v. United States* (1977) 430 U.S. 188, 191-192; *People v. Superior Court (Sparks)* (2010) 48 Cal.4th 1, 21; *People v. Morante* (1999) 20 Cal.4th 403, 431.)

Our case most nearly on point is *People v. King* (1993) 5 Cal.4th 59, where the court overruled *In re Culbreth* (1976) 17 Cal.3d 330. The *Culbreth* court had held that even if there were multiple counts involving multiple victims of violent crime, a firearm use enhancement under section 12022.5 could be imposed only once if all the charged offenses were incident to one objective and effectively comprised an indivisible transaction. (*Culbreth*, at p. 333.) The *King* court concluded that its holding overruling *Culbreth* could not be applied retroactively. (*King*, at p. 80.) "The *Culbreth* rule has been the law of this state since 1976. It was the law when defendant committed his crimes. Refusing to apply it here would make the punishment for his crimes more burdensome after he committed them. Defendant is therefore constitutionally entitled to its benefit." (*Ibid*.)

While the ex post facto clause bars applying this new rule to defendant, the enactment history of former section 12021, subdivision (a) makes it clear that the Legislature intended that a felon found in possession of several firearms be liable to conviction of and punishment for each of the firearms.

### B. Legislative History

Former section 12021, subdivision (a)(1), made it a felony for a convicted felon to possess "any firearm." As we have explained, the purpose of The

17

Dangerous Weapons Control Law, of which section former 12021, subdivision (a) was a part, is to protect the public by denying firearms to felons, who are considered more likely to commit crimes with them.  (*Bell*, *supra*, 49 Cal.3d at p. 544.)

The Legislature, in enacting former section 12001, subdivision (k) in 1994, made it clear that the magnitude of a felon's culpability depends on the number of weapons he or she possesses.  It provided that the possession of "each firearm . . . shall constitute a distinct and separate offense" under, among other provisions, section 12021.

Section 12001, subdivision (k), was enacted in response to *People v. Kirk* (1989) 211 Cal.App.3d 58.  *Kirk* construed former section 12020, subdivision (a), which made it a felony to possess "*any* instrument or weapon of the kind commonly known as a . . . sawed-off shotgun."  (Stats 1984, ch. 1562, § 1.1, p. 5499, italics added.)  The question was whether Kirk could be convicted of two violations of former section 12020, subdivision (a) "where he possessed two sawed-off shotguns at the same time and place."  (*Kirk*, at p. 61.)  Finding federal authority persuasive on the question whether the term "any" was ambiguous, the Court of Appeal concluded that:  (1) the term "any" in former section 12020, subdivision (a), ambiguously indicated the singular or the plural; and (2) the ambiguity should be construed in favor of a defendant.  (*Id*. at pp. 62-66.)  The statute, the court held, "fail[ed] to provide any warning that separate convictions will result for each weapon simultaneously possessed."  (*Id.* at p. 65.)  The court acknowledged, however, that the Legislature could amend the statute to permit multiple conviction and punishment, if it wished:  "We have no doubt the Legislature could, it if wanted to, make criminal *and subject to separate punishment* the possession of each and every sawed-off shotgun found at the same time and place.  [Citation.]"  (*Id*. at p. 62, italics added.)  In response, the

18

Legislature amended the statute to do just that. The legislative history of section 12001, subdivision (k), is replete with statements that it was intended to overrule *Kirk* and to make it clear that possession of each weapon constitutes a separate offense under the enumerated statutes. (See, e.g., Legis. Counsel's Dig., Sen. Bill No. 37, 5 Stats. 1994 (1993-1994 1st Ex. Sess.) Summary Dig., pp. 583-584.)

The Legislature, in repudiating *Kirk* and specifically providing that possession of each firearm is a separate offense, effectively adopted the rule we announce today. It expressed its clear intention that a felon may be punished separately for each firearm possession count of which he is convicted.

### III. DISPOSITION

The judgment of the Court of Appeal is affirmed.

**CORRIGAN, J.**

**WE CONCUR:**

**KENNARD, ACTING C. J.**
**BAXTER, J.**
**CHIN, J.**
**LIU, J.**
**SEPULVEDA, J.   \***

_____

**\*** Associate Justice, Court of Appeal, First Appellate District, Division Four, assigned by the Acting Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CONCURRING OPINION BY WERDEGAR, J.**

In February 2006, police found defendant, a felon, in simultaneous possession of seven firearms. At that time, as now, it was illegal for a felon to possess a firearm. (Pen. Code,[1] former § 12021, subd. (a)(1); now see § 29800, subd. (a)(1), added by Stats. 2010, ch. 711, § 6.) Defendant was convicted of seven separate counts of violating former section 12021, one conviction for each prohibited weapon. That he could be *convicted* of seven separate crimes on these facts is clear from the statutory scheme. (Former § 12001, subd. (k); now see § 23510.) Whether he could be separately *punished* for each conviction is the question before us.

As I explain, I agree with the majority that defendant may be separately punished for seven separate crimes. Like the majority, I reach that conclusion because the Legislature specifically amended the Penal Code to provide that each weapon could be the basis of a separate conviction, and it could have had no reason or purpose to make that change had it not intended that defendant could also be punished for each of those separate convictions. (Maj. opn., *ante*, at pp. 18-19.) Because there is no need to proceed further and disapprove dictum in *Neal v. State of California* (1960) 55 Cal.2d 11, which found section 654

---

[1]     All further statutory references are to the Penal Code unless otherwise stated.

applicable to preclude multiple punishment for multiple violations of the same statute, I do not join that part of the majority opinion.

Former section 12021 includes no express language referencing section 654, nor does it provide that it applies "notwithstanding any other provision of law" or contain some equivalent language to suggest an exception to section 654's prohibition on multiple punishment. But a legislative reaction to an appellate decision involving a different but related weapons law suggests the Legislature intended that felons be separately punished for each weapon they illicitly possess.

In *People v. Kirk* (1989) 211 Cal.App.3d 58, the defendant was convicted of possessing a sawed-off shotgun and a sawed-off rifle in violation of former section 12020, subdivision (a).[2] The facts indicated his possession of the two weapons was simultaneous: police entered the defendant's home in response to a report of a fight involving gunshots "and found a sawed-off shotgun on the living room couch and a sawed-off rifle in a closet in the bedroom." (*Kirk*, at p. 60.) The *Kirk* court explained that "[t]he principal question is whether defendant can be convicted of two violations of former section 12020 where he possessed two sawed-off shotguns at the same time and place." (*Id.* at p. 61.) Finding it irrelevant that the weapons were of different types and observing that no evidence showed they were possessed at different places or different times (*ibid.*), the *Kirk* court focused on the word "any" in the statute to conclude the defendant was

---

[2] At the time the defendant in *Kirk* committed his crime, former section 12020, subdivision (a) made it a felony for "[a]ny person in this state" to possess "any short-barreled shotgun" or "any short-barreled rifle." (Stats. 1984, ch. 1562, § 1.1, p. 5499.) A substantially identical law now appears as section 33215. (Stats. 2010, ch. 711, § 6.)

2

"entitled to the benefit of the statutory ambiguity"**3** (*Kirk*, at p. 65), that the possession of two illegal firearms constituted but one punishable act, and that section 654 barred punishing the defendant more than once for the simultaneous possession of two firearms (*Kirk*, at p. 65).

In response to *People v. Kirk*, *supra*, 211 Cal.App.3d 58, the Legislature amended former section 12001 to clarify that each illegal firearm was the basis of a separate crime. "In 1994, specifically in response to *Kirk,* the Legislature amended section 12001 by adding new subdivision[] (k) . . . . (Stats. 1994, First Ex. Sess. 1993–1994, ch. 32, § 1.) The new section[] provided as follows: [¶] '(k) For purposes of Section[] 12021 . . . , of this code, . . . notwithstanding the fact that the term "any firearm" may be used in [that] section[], each firearm . . . *shall constitute a distinct and separate offense under* [*that*] *section*[]. . . .' [¶] [This new subdivision was] added with the express intent of overruling the holding in *People* v. *Kirk* 'insofar as that decision held that the use of the term "any" in a weapons statute means that multiple weapons possessed at the same time constitutes the same violation.' (Stats. 1994, First Ex. Sess. 1993–1994, ch.

---

**3** "We have no doubt the Legislature could, if it wanted to, make criminal *and subject to separate punishment* the possession of each and every sawed-off shotgun found at the same time and place. [Citation.] The question is whether it did so by outlawing the possession of '*any* instrument or weapon of the kind commonly known as a . . . sawed-off shotgun, . . .' (Former § 12020, subd. (a), [second] italics added.)" (*People v. Kirk*, *supra*, 211 Cal.App.3d at p. 62, first italics added.) After reviewing analogous federal law, the *Kirk* court concluded that "former section 12020, subdivision (a) is facially ambiguous. As noted, the statute is directed at 'Any person . . . who . . . possesses . . . *any* instrument or weapon . . . .' (Italics added.) By its use of the term 'any' rather than 'a,' the statute does not necessarily define the unit of possession in singular terms" (*Kirk*, at p. 65), and that "[i]n the circumstances, defendant is entitled to the benefit of the statutory ambiguity" (*ibid*.).

3

32, § 5.)" (*People v. Rowland* (1999) 75 Cal.App.4th 61, 65; *People v. DeGuzman* (2003) 113 Cal.App.4th 538, 544 [quoting *Rowland*].)

At the time defendant was arrested in 2006, former section 12021, subdivision (a)(1) provided: "Any person who has been convicted of a felony . . . who owns, purchases, receives, or has in his or her possession or under his or her custody or control any firearm is guilty of a felony." (Stats. 2004, ch. 593, § 6, p. 4665; § 29800, subd. (a)(1) now provides the same thing.) Also at that time, former section 12001, subdivision (k), as amended in response to *People v. Kirk*, *supra*, 211 Cal.App.3d 58, provided that "For purposes of Section[] 12021 . . . each firearm . . . shall constitute a distinct and separate offense . . . ." (Stats. 2005, ch. 715, § 4, p. 5733.) Clearly the statutory scheme authorized the jury to convict defendant of seven separate counts of weapon possession, one for each firearm. But does it also compel an inference that the Legislature intended an implied exception to section 654 to permit multiple punishment as well?

I agree with the majority that it does. By adding subdivision (k) to former section 12001 specifically to overrule *People v. Kirk*, *supra*, 211 Cal.App.3d 58, the Legislature not only made clear that multiple *convictions* were permissible, it also necessarily implied that multiple *sentences* were also authorized. This is so because no plausible reason exists to allow for multiple convictions if the offender's aggregate sentence were to remain the same. "[W]e cannot assume our Legislature engaged in an idle act or enacted a superfluous statutory provision." (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 635.)

Inferring an exception to section 654 from the addition of subdivision (k) to former section 12001 suffices to resolve the case before us.  It is thus unnecessary to address the continued vitality of the *Neal* dictum, which found section 654 applicable to violations of the same statute.  (*Neal v. State of California*, *supra*, 55 Cal.2d at p. 18, fn. 1.)  Although I do not join the majority's discussion concerning *Neal*, I concur in the balance of the majority opinion finding section 654 inapplicable here.

**WERDEGAR, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Correa
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 161 Cal.App.4th 980
**Rehearing Granted**
_____

**Opinion No.** S163273
**Date Filed:** June 21, 2012
_____

**Court:** Superior
**County:** Sacramento
**Judge:** Patricia C. Esgro
_____

**Attorneys for Appellant:**

Conrad Petermann, under appointment by the Supreme Court, for Defendant and Appellant.
_____

**Attorneys for Respondent:**

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Charles A. French, Robert C. Nash and Jennevee H. De Guzman, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Conrad Petermann
Law Office of Conrad Petermann
323 East Matilijia Street, Suite 110
Ojai, CA  93023
(805) 646-9022

Jennevee H. De Guzman
Deputy Attorney General
1300 I Street, Suite 125
Sacramento, CA  94244-255
(916) 323-5809