Filed 9/12/13  P. v. Matchem CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>PIERRE LAMONT MATCHEM,<br><br>        Defendant and Appellant. | B239248<br><br>(Los Angeles County<br>Super. Ct. No. YA073041) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Scott T. Millington, Judge.  Affirmed as modified.

Randall Conner, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr., and Seth P. McCutcheon, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant, Pierre Lamont Matchem, appeals his conviction for petty theft (2 counts), resisting a peace officer (2 counts) and possession of a firearm by a felon, with prior serious felony conviction and prior prison term enhancements (Pen. Code, §§ 484, 148, subd. (a)(1), 12021 (former), 667, subd. (a) – (i), 667.5).[1] He was sentenced to state prison for a term of five years and six months.

The judgment is affirmed as modified.

## BACKGROUND

Viewed in accordance with the usual rule of appellate review (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence established the following.

1. *Prosecution evidence.*

On September 20, 2008, Chappell Bell was working as a loss prevention manager at the Burlington Coat Factory in Inglewood. While monitoring the store's surveillance cameras, Bell saw defendant Matchem and two other people going in and out of the fitting room. Matchem then took some clothes from one of his companions and began walking toward the exit. As Matchem left the store, the alarm went off. Loss prevention managers Tim Baker and Sam Pinon escorted Matchem back into the store, and Bell joined them.

Matchem suddenly shoved Pinon and turned toward Bell. Pinon grabbed Matchem, who began to reach into his front pocket. They fell to the floor struggling. Baker spotted a gun which he removed from Matchem's pocket. When Inglewood Police Officers John Knapp and George Sanford responded to the store, they found Matchem still on the floor struggling with Pinon. Knapp and Sanford exchanged places with Pinon, got on top of Matchem and held him down, trying to handcuff him. Matchem struggled, fought with the officers and tried to get away. Knapp told Matchem numerous times to put his arms behind his back because he was under arrest, but Matchem would not

---

[1] All further references are to the Penal Code unless otherwise specified.

2

comply. Because the officers could not subdue Matchem they radioed for help. After another officer arrived and used a taser on Matchem he was taken into custody.

2. *Defense evidence.*

Dr. Mark Jaffe, a psychiatrist, testified he was treating Matchem for schizoaffective disorder and had provided him with prescription antipsychotic and antidepressant medications.

Matchem testified he had been hearing voices since he was 17, but at the time of this shoplifting incident he had gone off his medication. He recalled being at the Burlington Coat Factory store with two companions. He was unaware he had any items in his hands when he left the store and he told the security guard it was an accident. The guard gave him permission to return the items, but then Pinon threatened him. Matchem threw the items back on the shelf and tried to leave, but some people attacked him. He did not realize he had a gun in his possession and he never heard the police tell him to stop resisting.

3. *Sentencing.*

Along with felon in possession of a gun, Matchem had been charged with two counts of robbery and two counts of resisting an executive officer (§ 69). The jury convicted him on the felon in possession count, but on the other counts, it found him guilty of the lesser included offenses of resisting a peace officer (§ 148, subd. (a)(1)) and petty theft. For the section 148 convictions, the trial court imposed a one-year consecutive prison term on count 3 (resisting Officer Knapp), and a concurrent one-year county jail term on count 4 (resisting Officer Sanford).

## CONTENTION

The trial court erred by failing to stay execution of the sentence on the count 4 conviction for resisting a peace officer.

## DISCUSSION

Matchem contends that under section 654, the prohibition against multiple punishment, the trial court should have stayed execution of the sentence imposed on count 4. This claim has merit.

3

1. *Legal principles.*

As we recently explained: "Section 654 provides, in part: 'An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision.' [¶] Section 654 prohibits punishment for two crimes arising from a single, indivisible course of conduct. [Citation.] Thus, if all of the crimes were merely incidental to or were the means of accomplishing or facilitating a single objective, the defendant may receive only one punishment. [Citation.] 'The defendant's intent and objective are factual questions for the trial court; [to permit multiple punishments,] there must be evidence to support a finding the defendant formed a separate intent and objective for each offense for which he was sentenced. [Citation.]' [Citation.]" (*People v. Islas* (2012) 210 Cal.App.4th 116, 129.)

However, " 'the limitations of section 654 do not apply to crimes of violence against multiple victims.' " (*People v. Oates* (2004) 32 Cal.4th 1048, 1063.) "[T]he multiple victim exception, simply stated, permits one unstayed sentence per victim of all the violent crimes the defendant commits incidental to a single criminal intent." (*People v. Garcia* (1995) 32 Cal.App.4th 1756, 1784.)

2. *Discussion.*

The Attorney General acknowledges Matchem was engaged in a single, indivisible course of conduct when he tried to prevent Knapp and Sanford from arresting him, but argues the concurrent sentence on count 4 was proper under the multiple victim exception to section 654. We conclude, however, that the exception did not apply in this case.

" [W]hether a crime constitutes an act of violence that qualifies for the multiple-victim exception to section 654 depends upon *whether the crime . . . is defined to proscribe an act of violence against the person.*" (*People v. Hall* (2000) 83 Cal.App.4th 1084, 1092, italics added, disapproved on other grounds in *People v. Correa* (2012) 54 Cal.4th 331, 343-344.) But section 148 is not defined as a crime of violence.

" ' "The legal elements of a violation of section [148(a)(1)] are as follows: (1) the defendant willfully resisted, delayed, or *obstructed* a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties. [Citations.]" [Citation.] The offense is a general intent crime, proscribing only the particular act (resist, delay, obstruct) without reference to an intent to do a further act or achieve a future consequence. [Citation.]' [Citation.] [¶] 'Section 148 is most often applied to the physical acts of a defendant. [Citation.] For example, physical resistance, hiding, or running away from a police officer have been found to violate section 148. [Citations.] But section 148 "is not limited to nonverbal conduct involving flight or forcible interference with an officer's activities. No decision has interpreted the statute to apply only to physical acts, and the statutory language does not suggest such a limitation." [Citation.]' " (*People v. Christopher* (2006) 137 Cal.App.4th 418, 431.)

*Christopher* concluded that because the defendant tried "to mislead the police by falsely identifying himself . . . he thereby willfully obstructed a peace officer in the discharge of, or attempt to discharge, his duties within the meaning of section 148(a)(1)." (*People v. Christopher, supra,* 137 Cal.App.4th at p. 432.) This view of section 148 as a non-violent crime was recently noted by *People v. Smith* (2013) 57 Cal.4th 232, which, while comparing misdemeanor resisting (§ 148) with felony resisting (§ 69), characterized section 148 as "the lesser offense of resisting the officers without the use of force or violence . . . ." (*People v. Smith, supra,* at p. 245.) The Attorney General has cited no case holding section 148 to be a crime of violence for purposes of section 654's multiple victim exception.[2]

---

[2]     Although *People v. Correa, supra,* 54 Cal.4th 331, recently concluded "section 654 does not bar multiple punishment for multiple violations of the same criminal statute," this new rule was not applied retroactively. (*Id*. at p. 334.)

" 'When section 954 [defendant may be convicted of all offenses charged] permits multiple conviction, but section 654 prohibits multiple punishment, the trial court must stay execution of sentence on the convictions for which multiple punishment is prohibited. [Citations.]' " (*People v. Sloan* (2007) 42 Cal.4th 110, 116.) We will order the judgment modified by staying execution of the sentence imposed on count 4.

## DISPOSITION

The judgment is affirmed as modified. The concurrent one-year county jail term imposed on count 4 is vacated; the sentence on that count shall be stayed. The trial court is directed to prepare and forward to the Department of Corrections and Rehabilitation an amended abstract of judgment.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KLEIN, P. J.

We concur:

KITCHING, J.

ALDRICH, J.

6