Filed 9/27/13  P. v. Lacy CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

|  |  |
|---|---|
| THE PEOPLE, | C070169 |
| Plaintiff and Respondent, | (Super. Ct. No. CM034673) |
| v. |  |
| DUSTY RAY LACY, |  |
| Defendant and Appellant. |  |

A jury found defendant Dusty Ray Lacy guilty of first degree burglary (Pen. Code, § 459; undesignated section references are to this code; count 1), possession of a firearm by a convicted felon (former § 12021, subd. (a)(1), now § 29800, subd. (a)(1); count 8), three counts of attempted first degree robbery (§§ 664/211; counts 2, 3, 4), and three counts of assault with a semiautomatic firearm (§ 245, subd. (b); counts 5, 6, 7).  The jury found that defendant personally used a firearm during the commission of counts 2 through 7.  (§ 12022.5, subd. (a).)  In connection with count 1, the jury found that the burglary was a violent felony in that another person other than an accomplice was present.  (§ 667.5, subd. (c)(21).)

The court sentenced defendant to state prison for an aggregate term of 27 years.

1

Defendant appeals. He contends (1) section 654 barred punishment for both the burglary offense and the three attempted robberies, (2) the trial court erroneously imposed a presentence investigation report fee, and (3) the trial court erred in sentencing on the subordinate counts and enhancements. We will modify the judgment, staying sentence on the attempted robberies and the accompanying enhancements, and order the minutes and abstract corrected, but otherwise affirm.

**FACTS**

In 2010 Clayton Denlay, Austin Langley, and Christopher Potts lived together in a house on Nevada Avenue in Oroville. About 9:30 p.m. on October 10, 2010, while Denlay's girlfriend Tessa Ralston was in the kitchen of the house making dinner, a man, later identified as defendant, and a woman, each armed with a firearm and wearing masks and head coverings, entered the house through the front door. Denlay was in the living room and Langley was in his bedroom. Defendant pointed his gun at Ralston and ordered, "Get the fuck on the ground." Using tape, the woman bound Denlay's hands and feet and Ralston's hands. Defendant ordered the woman to look for others in the house. She found Langley in his bedroom, tied him up, and brought him into the living room, where defendant pointed his gun at both Denlay and Langley. Defendant demanded the victims' wallets, jewelry, car keys, and cell phones. The woman collected several items and put them in Ralston's purse. The woman returned Langley to his bedroom in order for him to retrieve the keys to his car. When Langley and the woman were in his bedroom, defendant head-butted Denlay. Denlay pushed defendant into a baby's playpen and told Ralston to run. Langley was able to free himself and ran into the living room. Langley saw the woman flee the house. Using his fist, Langley struck defendant; threw him on the ground, causing defendant to drop his gun; and then stomped on his face numerous times. Langley also struck defendant with the dropped gun, a semiautomatic pistol. Langley used a knife from the kitchen to cut Denlay free. Denlay and Langley continued to beat defendant until the police arrived.

2

Meanwhile, Ralston ran a short distance to the house of Denlay's friend, Johnny Silva, opened the door, and told Silva to call 911. Silva drove Ralston back to Denlay's house and arrived about the same time as the police.

Defendant was bloodied and lying on the ground. He identified himself, and Ralston recognized him as someone she had met years ago. Defendant was wearing gloves and had a left-handed holster on the right side of his belt. A search of his pockets revealed a lighter, jewelry, a small clear bag, and money. A magazine clip for the gun was found near the porch, and another one was found in a backpack in the house. Blood was found in the house and on the porch, the lawn, and the gun. Denlay, Ralston, and Langley all had duct tape on their wrists. In the house, officers found more duct tape, a beanie, sweatpants, and eight to 10 pounds of marijuana.

Defendant spoke with a detective. He claimed he had been walking to his relative's house when he was assaulted by two men, one of whom used a pistol to strike him on the head. When asked about his holster, defendant said one of the men must have put it on his belt. A defense private investigator opined that defendant is right-handed.

The parties agreed that the trial court could take judicial notice of defendant's 2009 felony conviction.

## DISCUSSION

### I

Defendant argues the court violated section 654 by imposing consecutive terms for the burglary and attempted robbery convictions and the attendant enhancements. However, on closer review, defendant's argument is that the burglary and attempted robberies were part of an indivisible course of conduct that included the assault counts; he can be punished for the assaults but punishment for the burglary and attempted robbery convictions and their associated enhancements must be stayed under section 654. So the crux of defendant's complaint concerns multiple punishment and not consecutive terms. The People concede the court should have stayed counts 2 through 4 but argue

3

punishment was appropriately imposed for burglary (count 1).  We accept the People's concession and will conclude that, as charged, burglary was a violent offense and thus section 654 does not apply.

*Background.*  The probation report recommended consecutive terms for all offenses except for count 8, possession of a firearm by a convicted felon.

At sentencing, the court selected count 5 (assault with a semiautomatic firearm) as the principal term, imposed the upper term of nine years, and then imposed consecutive sentences for the subordinate terms (counts 1, 2, 3, 4, 6, 7).  The court stayed sentence on count 8.

Defense counsel objected that the court's ruling on counts 3, 4, 6, and 7 violated section 654.  The trial court stated that consecutive terms were chosen because the crimes "involve[d] separate acts of violence or threats of violence" and further found "one or more of the crimes involv[ed] multiple victims and for that reason, the crimes and sentences for principal and subordinate terms are to run consecutive."

*Analysis.*  Section 654, subdivision (a) provides:  "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. . . ."

*People v. Correa* (2012) 54 Cal.4th 331 (*Correa*) recently determined that "section 654 does not bar multiple punishment for multiple violations of the same criminal statute" (*Correa*, at p. 334), citing the plain language of section 654, that is, " '[a]n act or omission that is punishable in different ways by *different* provisions of law . . . .'  (Italics added [by *Correa*].)"  (*Correa*, at pp. 340-341 [quotation], 344.)  Because its interpretation of section 654 altered accepted law, *Correa* concluded that the new rule would be applied prospectively.  (*Correa*, at pp. 334, 344.)

The offenses here occurred before the *Correa* decision so its rule is not applicable here.  Defendant claims that separate punishment for the assaults of the three victims and

4

the attempted robberies of the same victims as well as the burglary is barred by section 654. With respect to the attempted robberies, we agree under the facts here. We disagree as to the burglary.

"[W]here multiple criminal acts are committed, a defendant can be separately punished only for those that are independent violations committed in pursuit of different criminal objectives. [Citation.] . . . [¶] . . . [¶] [W]hen a defendant is responsible for both an assault and robbery, he can be punished for both crimes if the assault was not incident to the robbery and was motivated by a separate criminal objective [citation], but if the assault was committed in order to accomplish the robbery, then the defendant can be punished for only one of the crimes. [Citations.]" (*People v. Martinez* (1984) 150 Cal.App.3d 579, 606.)

Here, defendant assaulted Denlay, Langley, and Ralston with the semiautomatic firearm when he pointed it at them and demanded their belongings. There is no evidence that he used the gun for any other purpose. Thus, section 654 bars multiple punishment for his crimes of assault with a semiautomatic firearm and attempted robbery. Since attempted first degree robbery carries a lesser punishment than assault with a semiautomatic firearm, we will modify the judgment to stay sentence on counts 2, 3, and 4 and the accompanying enhancements. (*People v. Beamon* (1973) 8 Cal.3d 625, 639-640.)

We conclude that the same does not hold true for defendant's first degree burglary offense (count 1). The jury expressly found that defendant's burglary offense was a violent felony when it found the allegation of person present to be true.[1]

---

[1] Neither party discusses this point. While not an enhancement for purposes of additional time, it was a special allegation, making the first degree burglary a violent felony (§ 667.5, subd. (c)(21)) rather than just a serious felony (§ 1192.7, subd. (c)(18)).

Generally, when a defendant commits both burglary and the intended felony, section 654 bars punishment for both. (*People v. Centers* (1999) 73 Cal.App.4th 84, 98.) The multiple victim exception, however, permits punishment for each crime of violence committed against a different victim. (*Id*. at p. 99.) " 'Under this exception, "even though a defendant entertains but a single principal objective during an indivisible course of conduct, he may be convicted and punished for each crime of violence committed against a different victim." [Citations.] The reason for the multiple victim exception is that "when a defendant ' "commits an act of violence with the intent to harm more than one person or by means likely to cause harm to several persons," his greater culpability precludes application of section 654.' " [Citation.]' [Citation.]" (*Centers*, at p. 99.) "Burglary, standing alone, is not a violent crime for purposes of the multiple victim exception. [Citations.] However, it may be treated as such when there is a finding that the defendant inflicted great bodily injury in the commission of the burglary. [Citations.] We believe it also may be treated as such when there is a finding that the defendant personally used a firearm in the commission of the burglary. [Citation.] For example, robbery is deemed a violent crime [citation], even though it may be committed by fear as well as actual force. [Citation.] The 'use' of a firearm has been defined as either 'conduct which actually produces harm . . . [or] conduct which produces a fear of harm or force by means or display of a firearm . . . .' [Citation.] By analogy, any crime involving the 'use' of a firearm should be deemed violent for this purpose." (*Ibid*.)

Defendant argues that it was not alleged or found to be true that he used a firearm in the commission of the burglary, so there was no basis for finding the burglary to be a crime of violence.

The People argue that defendant's crime of burglary was a violent offense for purposes of section 654 because defendant and his accomplice were both armed when they entered and defendant pointed his gun at each of the victims while his accomplice pointed hers at Langley. The People claim the question whether section 654 applies is for

the trial court, citing *People v. Hutchins* (2001) 90 Cal.App.4th 1308, 1312, and it matters not that defendant was not charged with and the jury did not find he used a firearm in the commission of the burglary or that Christopher Potts was not named in the information. The People also argue that Potts was an additional victim who was not home at the time of the offenses but that defendant's burglary offense victimized Potts as well.

"A defendant who commits an act of violence with the intent to harm more than one person or by a means likely to cause harm to several persons is more culpable than a defendant who harms only one person." (*Neal v. State of California* (1960) 55 Cal.2d 11, 20, disapproved on another point in *Correa*, *supra*, 54 Cal.4th 331.) The multiple-victim exception applies when both crimes are crimes of violence against a person. (*People v. Miller* (1977) 18 Cal.3d 873, 886 (*Miller*).) "We must look to the statutory definition of the crimes at issue, *including any allegations in enhancement*, to determine whether those crimes were crimes of violence against a person within the meaning of the multiple-victim exception to section 654." (*People v. Kurtenbach* (2012) 204 Cal.App.4th 1264, 1291, italics added; see *People v. Hall* (2000) 83 Cal.App.4th 1084, 1089, 1091.)

The jury found that "defendant entered an inhabited dwelling house occupied by Clayton Shane Denlay, Austin Riley Langley, and Tessa Lynn Ralston, who were not accomplice's [*sic*], but were present in the residence during the commission of the [burglary], within the meaning of Penal Code section 667.5(c)," i.e., a violent felony. Burglary as charged and found to be true here was a crime of violence committed against Denlay, Langley, and Ralston within the meaning of the multiple-victim exception to section 654. Section 654 is not applicable to bar punishment for the burglary involving all three victims since the burglary and each assault offense involve at least one different victim. (*Miller*, *supra*, 18 Cal.3d at p. 886, fn. 11.)

## II

Without objection, the court ordered defendant to pay various fees and fines, including $736 for the presentence report (§ 1203.1b) as recommended by the probation

7

report. The court found that defendant had no ability to pay public defender fees and then proceeded to impose various fees and fines, including a $10,000 restitution fine and the presentence report fee. From this, defendant argues the trial court made an implied finding of an ability to pay for the presentence report, a finding not supported by the evidence and made without informing defendant of his right to a hearing on ability to pay. We agree with the People that defendant has forfeited his claims by failing to object.

When the court ordered defendant to pay the cost of the preparation of the presentence report he did not object, or claim no ability to pay or lack of compliance with the procedural requirements prior to imposition of the fee. Because defendant did not object, he has forfeited his claims. (*People v. McCullough* (2013) 56 Cal.4th 589, 597-599 [defendant forfeited sufficiency of the evidence to support ability to pay booking fee by failing to object]; *People v. Crittle* (2007) 154 Cal.App.4th 368, 371; *People v. Valtakis* (2003) 105 Cal.App.4th 1066, 1071-1076 [§ 1203.1b probation fee]; *People v. Robinson* (2002) 104 Cal.App.4th 902, 905-906 [procedural irregularities waived by not objecting to imposition of probation report fee]; *People v. Gibson* (1994) 27 Cal.App.4th 1466, 1468-1469.)

### III

Finally, defendant contends the method the trial court used in imposing consecutive subordinate terms violated section 1170.1, subdivision (a) and "must be corrected." Defendant argues, "rather than sentence [him] to the required one-third the middle term for the subordinate offenses and the enhancements thereto, the court sentenced [him] to full upper (the offenses) and middle (the enhancements) terms, and then stayed all but one-third of the middle terms." The People agree that the judgment requires modification, as do the minute order and abstract of judgment.

Specifically, the trial court sentenced as follows:

8

For the principal term, count 5 (assault with a semiautomatic firearm), nine years plus the midterm of four years for the personal use of a firearm enhancement; a consecutive "upper term of 9 years" with all but one-third of the midterm stayed, or two years each, for counts 6 and 7 (the other assault offenses) plus one-third the midterm, or one year four months, for each count for the firearm enhancement; a consecutive "upper term" with all but one-third the midterm stayed each for counts 2, 3, and 4 (attempted robbery offenses) plus one-third the midterm for each count for the firearm enhancement; a consecutive "upper term of 6 years" with all but one-third the midterm, or 16 months, stayed for count 1; and the upper term of three years for count 8 (possession of a firearm by a convicted felon), stayed pursuant to section 654.

Section 1170.1, subdivision (a) provides, in relevant part, as follows:

"The principal term shall consist of the greatest term of imprisonment imposed by the court for any of the crimes, including any term imposed for applicable specific enhancements. The subordinate term for each consecutive offense shall consist of one-third of the middle term of imprisonment prescribed for each other felony conviction for which a consecutive term of imprisonment is imposed, and shall include one-third of the term imposed for any specific enhancements applicable to those subordinate offenses."

Though the sentence imposed by the court would result in the correct punishment, it does not by its terms comply with section 1170.1, subdivision (a). There is no authority for imposing the upper term and staying all but one-third of the middle term. (*People v. Riolo* (1983) 33 Cal.3d 223, 227.) The court should have simply imposed one-third of the middle term as prescribed by section 1170.1. We also note "[a] subordinate term is one-third of the *middle term* even if the trial court had initially selected the lower or upper term as the base term." (*People v. Neely* (2009) 176 Cal.App.4th 787, 798.)

Finally, we note that the abstract of judgment erroneously reflects that the court imposed the upper term of two years, rather than one-third the midterm or two years, on count 7.

**DISPOSITION**

Consistent with the views expressed herein, the judgment is modified to reflect imposition of the principal term of nine years for count 5, plus the midterm of four years for the personal use of a firearm enhancement, and the imposition of consecutive subordinate terms as follows:  one-third of the midterm of six years, or two years each, for counts 6 and 7 plus a firearm enhancement of one-third the midterm, or one year four months, for each count; one-third the midterm each for counts 2, 3, and 4 plus a firearm enhancement of one-third the midterm for each count with the sentence and accompanying enhancement stayed pursuant to section 654; one-third the midterm, or 16 months, stayed, for count 1; and the upper term of three years for count 8, stayed.  The trial court is directed to prepare an amended abstract of judgment correcting the terms on the subordinate offenses and to forward a certified copy thereof to the Department of Corrections and Rehabilitation.  As modified, the judgment is affirmed.


                                                    RAYE                , P. J.



We concur:



        NICHOLSON        , J.



        DUARTE          , J.



10