Filed 12/9/20  P. v. Bias CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DAVID LAVERN BIAS,<br><br>Defendant and Appellant. | F079716<br><br>(Super. Ct. No. VCF349995)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Tulare County.  Juliet L. Boccone, Judge.

Siena Kautz, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Timothy L. O'Hair, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Franson, Acting P.J., Smith, J. and Snauffer, J.

Defendant David Lavern Bias was convicted of residential burglary, unlawful taking or driving of a vehicle, second degree burglary, and theft of a firearm. He contends on appeal that (1) the trial court erred in failing to stay his second degree burglary and unlawful taking or driving of a vehicle convictions pursuant to Penal Code section 654,[1] and (2) his two one-year prior prison term enhancements should be stricken pursuant to section 667.5, subdivision (b), as amended by Senate Bill No. 136 (2019–2020 Reg. Sess.) (Senate Bill 136). The People agree. We vacate the sentence, remand for resentencing with directions, and affirm in all other respects.

## PROCEDURAL SUMMARY

On November 21, 2017, the Tulare County District Attorney filed an information charging defendant with first degree residential burglary (§ 459; count 1), grand theft of a firearm (§ 487, subd. (d)(2); count 2), second degree burglary (§ 459; count 3), and unlawful driving or taking of a vehicle (Veh. Code, § 10851, subd. (a); count 4). As to all counts, the information alleged defendant had served five prior prison terms (§ 667.5, subd. (b)).

On April 30, 2019, the jury found defendant guilty on all counts. On the same day, the parties entered into an agreement whereby defendant admitted having served two prior prison terms in exchange for dismissal of the other three prior prison term enhancements. The two admitted prior prison terms were served for convictions of unlawful driving or taking of a vehicle (Veh. Code, § 10851) and identity theft (§ 530.5, subd. (a)).

On July 15, 2019, the trial court sentenced defendant to seven years eight months in prison as follows: on count 1, four years (the middle term) plus two one-year prior prison term enhancements; on count 2, three years (the aggravated term) concurrent to the term on count 1, stayed pursuant to section 654; on count 3, eight months (one-third the

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

middle term) consecutive to the term on count 1; and on count 4, one year (one-third the middle term) consecutive to the term on count 1.[2]

On July 31, 2019, defendant filed a notice of appeal.

## FACTUAL SUMMARY

### *Prosecution's Case*

Starting in 2004, Shane Hansen operated a refrigeration hardware business in Tulare County. Hansen's business and home were located on the same property. Defendant was Hansen's best friend in high school in the late 1980s. After Hansen began his business, he hired defendant several times as an independent contractor. Hansen also allowed defendant to live with him and his family at various points over the years. Most recently, defendant lived in Hansen's recreational vehicle and worked for him in 2016 until defendant was terminated in September or October of that year.

Hansen kept a gun safe in his home. The only people who Hansen had told the combination were his wife and defendant.

Before Hansen left town for New Year's weekend at the end of 2016, he asked one of his employees, David Shelton, to check on his home and business while he and his family were out of town. Shelton visited the home and business on December 31, 2016, and found nothing amiss. Shelton returned to Hansen's properties with his wife on January 1, 2017. As soon as Shelton reached the gate to the property, he saw one of Hansen's work trucks stuck in the mud in a neighboring pistachio field. He called Hansen and called 911.

Shelton then walked onto the property and observed that the front door to Hansen's home was ajar, the door frame appeared to have suffered damage at the striker

---

[2] At the same sentencing hearing, defendant was sentenced to an additional four-year term on an unrelated matter. Both sentences are reflected on the same abstract of judgment for a total term of 11 years eight months.

3.

plate, the gun safe that was located in the home had been removed, and ammunition was scattered on the living room floor.

Tulare County Sheriff's Detective Greg Burns responded to the 911 call. He observed a safe in the back of the truck bed. The safe was lying on its back with its door ajar and showed no signs that it had been forced open. Next, he observed that "[t]he front door [to the house] was open, but did not appear to have been damaged by the typical method used, such as a door kick or pry bar marks." Inside the house, ammunition of various calibers was strewn about the entryway and heavy scrape marks led from near the front door down to the driveway. Otherwise, the house appeared to be untouched. There were televisions, a purse, jewelry, and other apparently valuable items visible that did not appear to have been tampered with.

Burns discussed the contents of the safe with Hansen. Then Burns identified an item left in the safe that Hansen did not keep in the safe—a syringe.

Delores Garcia worked for Hansen. She had worked alongside defendant before he was fired. On December 30, 2016, defendant called Garcia to ask her when she was leaving work. Defendant told her that he wanted to deliver a dishwasher for the Hansen home. Garcia thought defendant's inquiry "didn't sound right, because he was basically calling to ask [her] if they were there or not." She told defendant when she would be leaving, and he responded that he was going to try to make it to the property for the delivery before she left. Defendant did not come to the property to deliver the dishwasher before Garcia left.

On February 21, 2017, officers attempted to initiate a traffic stop on a gold van defendant drove. Defendant fled and the officers did not apprehend him on that date. On the same date, officers searched the home of defendant's girlfriend, Rachel McDermott. During that search, they discovered syringes that were similar or identical to the syringe discovered in the safe.

4.

***Defense's Case***

McDermott testified she was defendant's girlfriend and was a family friend of the Hansen family. During the New Year's weekend at the end of 2016 and beginning of 2017, defendant stayed with her, at her home in Three Rivers. Defendant arrived before dinner on December 30, 2016, and did not leave her home until January 2, 2017. Defendant only left once, early in the day on December 31, 2016, for about 20 minutes, to purchase beer. To drive from her house to the Hansen's house it would take approximately one hour.

Defendant testified he arrived at McDermott's house on December 30, 2016, at approximately 9:00 p.m. He left the house on December 31, 2016, to get beer at the store and returned shortly after. He did not leave again until the afternoon of January 2, 2017. Defendant did not and has not ever stolen anything from Hansen.

Defendant had opened Hansen's safe three or four times at Hansen's direction. When Hansen gave defendant the code, Hansen mentioned that the code was his stepfather's phone number, but defendant did not recognize it. Defendant did not memorize the safe code. He wrote the safe code down on a business card on a tray he kept in Hansen's trailer that defendant lived in. The notation read " 'Safe combo,' and the combination." While defendant lived in the trailer, many people came in and out of it and all of Hansen's employees used the trailer as a "hang out spot."

Defendant testified Hansen fired him about a week before Thanksgiving in 2016. Hansen fired him because of defendant's relationship with McDermott, who was Hansen's business partner's wife. The following week, Hansen called defendant and asked him to watch Hansen's property while he was out of town. Hansen also wanted defendant to come back and work for him because mistakes were made after defendant left. However, too much tension existed between defendant and Hansen's wife because of defendant's relationship with McDermott. Ultimately, defendant never got his belongings, including the business card with the security code, from Hansen's trailer.

*Prosecution's Rebuttal Case*

Burns testified that at the preliminary hearing McDermott testified defendant only stayed with her from midday on December 30, 2016, until midday on January 1, 2017.

When Burns searched McDermott's home on February 21, 2017, she did not tell him that defendant stayed with her on January 1, 2017.

## DISCUSSION

## I.     Section 654

First, defendant argues that the terms on counts 3 (burglary of the Hansen residence) and 4 (unlawful taking of a vehicle) should be stayed pursuant to section 654. The People agree, as do we.

Section 654, subdivision (a) provides that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."  The inquiry to determine whether separate sentences can be imposed pursuant to section 654 is "[w]hether a course of criminal conduct is divisible and therefore gives rise to more than one act."  (*Neal v. State of California* (1960) 55 Cal.2d 11, 19; *People v. Correa* (2012) 54 Cal.4th 331, 335–336.)  That inquiry turns on " 'the intent and objective' " of the defendant.  (*Correa*, at p. 336.)  " 'If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' "  (*Ibid*.)

Here, the record supports the parties' agreement that the residential burglary conviction (count 1) was based on defendant's entering Hansen's residence with the intent to steal the safe; the second degree burglary conviction (count 3) was based on defendant's entering Hansen's business to steal the keys to his truck; the unlawful driving of a vehicle conviction (count 4) was based on defendant's driving Hansen's truck; and the grand theft of a firearm conviction (count 2) was based on defendant's theft of the firearms from the safe.

6.

The parties further agree, as do we, that *People v. Bauer* (1969) 1 Cal.3d 368 controls here. In *Bauer*, the defendant and another man gained access to the elderly victims' home by false pretenses. (*Id*. at p. 372.) The defendant then drew a revolver, and both men detained the victims, ransacked the house, and carried the loot to the garage. (*Ibid*.) Once in the garage, the defendant and the other man drove away in one of the victim's vehicles. (*Ibid*.) The Supreme Court concluded that the defendant could not be punished for the residential burglary and the vehicle theft because the acts comprised an indivisible transaction where the defendant "formed the intent to steal the [vehicle] during the robbery if not before it." (*Id*. at p. 378.)

The same is true here. All of defendant's crimes—burglary of the business to obtain the truck keys, residential burglary to access the safe, vehicle theft to transport the safe, and theft of the firearms—were all part of an indivisible transaction and pursuant to the single objective of stealing from the safe. Therefore, the trial court should have stayed all but the longest of the terms for those offenses. (§ 654, subd. (a).)

## II. Senate Bill 136

Second, defendant argues his two prior prison term enhancements must be stricken based on the retroactive application of Senate Bill 136. The People agree, as do we.

Effective January 1, 2020, Senate Bill 136 amended section 667.5, subdivision (b) to limit application of prior prison term enhancements to only prior prison terms that were served for sexually violent offenses as defined by Welfare and Institutions Code section 6600, subdivision (b). (§ 667.5, subd. (b).) (Stats. 2019, ch. 590, § 1.) That amendment applies retroactively to all cases not yet final on Senate Bill 136's effective date. (*People v. Lopez* (2019) 42 Cal.App.5th 337, 341–342, citing *In re Estrada* (1965) 63 Cal.2d 740, 742.)

Here, the trial court imposed two one-year section 667.5, subdivision (b) prior prison term enhancements for terms served for convictions of unlawful driving or taking of a vehicle (Veh. Code, § 10851) and identity theft (§ 530.5, subd. (a)), neither of which

7.

is a sexually violent offense as defined in Welfare and Institutions Code section 6600, subdivision (b). On January 1, 2020, defendant's case was not yet final. Therefore, as the parties agree, defendant is entitled to the ameliorative benefit of Senate Bill 136's amendment to section 667.5, subdivision (b). We therefore strike defendant's prior prison term enhancements.

Where an appellate court strikes a portion of a sentence, remand for " 'a full resentencing as to all counts is [generally] appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances.' " (*People v. Buycks* (2018) 5 Cal.5th 857, 893.) When an action is remanded to a trial court for resentencing, the court is permitted to impose the same sentence it originally imposed if some other appropriate method of sentence calculation exists to reach the same result. (See *People v. Torres* (2008) 163 Cal.App.4th 1420, 1431–1433.) However, a trial court cannot impose a *higher* sentence in that situation. (*Torres*, at pp. 1432–1433; *People v. Mustafaa* (1994) 22 Cal.App.4th 1305, 1310–1312.)

Here, because we strike a portion of the sentence, we remand the matter to the trial court for resentencing so the trial court can exercise its discretion in light of the changed circumstances. On remand, the trial court is directed to impose a sentence that does not exceed defendant's original sentence of seven years eight months.

## DISPOSITION

The sentence is vacated and the matter is remanded for resentencing. The trial court is directed to stay the terms on counts 3 and 4 pursuant to section 654, and to strike the two prior prison term enhancements (§ 667.5, subd. (b)). Following resentencing, the trial court shall issue an amended abstract of judgment and forward it to the appropriate entities. In all other respects, the judgment is affirmed.