Filed 2/1/21  P. v. Lopez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G058407 |
| v. | (Super. Ct. No. 17CF2106) |
| RICHARD LOPEZ, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Megan Wagner, Judge.  Affirmed as modified.  Remanded for resentencing.

David P. Lampkin, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Paige B. Hazard and Steve Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant Richard Lopez of torture, aggravated mayhem, domestic violence-related infliction of traumatic corporal injury, criminal threats, and arson of personal property. It further found defendant personally inflicted great bodily injury in committing the first three offenses. The trial court separately found defendant had served a prior prison term for a domestic violence conviction.

Defendant was sentenced to a "total aggregate [of] seven years plus seven to life." Specifically, his sentence comprised: an indeterminate term of seven years to life on the torture, plus a low term consecutive three years for the great bodily injury enhancement; an upper term three-year consecutive determinate sentence for the criminal threats conviction; a one-year consecutive sentence for the prison prior conviction enhancement; and a two-year concurrent sentence for the arson. Sentences on the aggravated mayhem and domestic violence convictions were imposed and stayed pursuant to Penal Code section 654 (undesignated statutory references are to the Penal Code).

On appeal, defendant contends the trial court made two sentencing errors: (1) The court improperly imposed a concurrent term for the arson, arguing it too should have been stayed under section 654; and (2) The one-year prison prior enhancement was erroneous because defendant's prior conviction for domestic violence no longer qualifies for that enhancement. We reject the first claim, but agree with the second. The sentence is therefore vacated, the prison prior is stricken, and the matter is remanded for resentencing.

**FACTS**

Because defendant does not challenge his convictions or their underlying factual particulars, we need not recite them in extensive detail. Additional facts relevant to the specific issues he raises on appeal are found in the discussion below.

Defendant had a fractious and abusive relationship with his victim M.G. Defendant regularly choked M.G., pulled her hair, and threatened her with a knife. Once,

2

when M.G. had her infant daughter with her at the motel room where she was living, defendant threatened the baby by holding a screwdriver to the child's neck.

One night, after a midnight argument with defendant, M.G. went to her motel room, fell asleep and, in "the early morning hours," was awakened by defendant coming into the room. He told her he did not want to hurt her, but he had to. He started to choke her and told her he was going to shut her up forever. He released her, but then began choking her again, and repeated this pattern several times.

Defendant then took M.G.'s and her baby's clothing from the closet and threw them on the floor. He proceeded to pour a container of acetone over M.G.'s head, her body, the clothes on the floor, the curtains, and the bed.[1] He pulled out a lighter, lit the pants M.G. was wearing, and she "started to burn." The flames spread to her blouse and her hair, and then to the bed, the clothing on the floor, and the curtains. M.G. said she felt like she was dying.

Defendant tried to put out the fire, and eventually pushed M.G. out of the motel room. They went to M.G.'s car and defendant drove them to a Walmart to get something to treat M.G.'s burns. Defendant threatened to kill M.G. if she did not stop crying or if she ever reported what he had done. Along the way, defendant forced M.G. to throw the empty acetone can out the window and, when she hesitated, he grabbed her by her burned shoulder and said if she ever told anyone what had happened, he would shut her up forever. She said this made her feel like "death."

In the Walmart parking lot, defendant asked M.G. to forgive him and to promise not to tell anyone what he had done. M.G. said she was "very injured," and the pain was getting worse. She asked defendant to take her to a hospital, but he refused, telling her they would ask questions and call the police.

---

[1] Defendant had purchased a can of acetone at 2:40 that morning. The can was unopened when defendant came into the room and M.G watched him take the top off with a screwdriver.

3

At trial, M.G. identified photographs showing burn injuries to her hands, legs, feet, shoulder, ear, and face. She had suffered second and third degree burns over large portions of her body, and said she was in pain for about a month after the incident. It still hurt her to wear clothing and to walk, and the burn scars remained at the time of the trial.

About a week after she was set afire, M.G. got a phone call from defendant. He told her she was "worth shit" because she had not answered the phone quickly enough. He accused her of being with another man, and said that what he had done to her before could not be compared to what he was going to do now. M.G. said the call made her feel "[t]hat now [she] was really going to be dead." In a second call, defendant told her he was on his way over to her motel room and, when he arrived, he was going to kill her. She believed him. M.G. finally called 911, and police took her to the safety of a shelter. When asked why she called 911, she testified that if she "didn't do it at that moment[,] he would kill me, and I was no longer going to live."

## DISCUSSION

### 1. *Section 654 Did Not Require a Stayed Sentence on the Arson Conviction*

Defendant first contends the three-year concurrent sentence imposed for his arson conviction should instead have been stayed pursuant to section 654. We are not persuaded.

#### A. *Legal Background and Standard of Review*

Section 654 provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) It "precludes multiple punishment for a single act or omission, or an indivisible course of conduct" (*People v. Deloza* (1998) 18 Cal.4th 585, 591 (*Deloza*), and ensures a defendant's punishment will

4

be commensurate with his or her criminal culpability. (*People v. Kramer* (2002) 29 Cal.4th 720, 723).

Furthermore, a trial court may not impose a *concurrent* sentence otherwise precluded by section 654, because a defendant is still subjected to the term of all imposed sentences, including those that are being served simultaneously. (*People v. Jones* (2012) 54 Cal.4th 350, 353; *Deloza, supra*, 18 Cal.4th at p. 592 ["Section 654 does not allow any multiple punishment, including either concurrent or consecutive sentences"].) Instead, if a defendant suffers more than one conviction, and punishment for one is barred by section 654, "that section requires the sentence for one conviction to be imposed, and the other imposed and then stayed." (*Deloza,* at pp. 591-592.)

"Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*Neal v. State of California* (1960) 55 Cal.2d 11, 19 (*Neal*), disapproved on other grounds in *People v. Correa* (2012) 54 Cal.4th 331, 334.) Conversely, section 654 does *not* apply to a course of criminal conduct where a defendant has separate but simultaneous objectives. (See *People v. Latimer* (1993) 5 Cal.4th 1203, 1212, & cases cited there.)

For purposes of section 654, "'[t]he defendant's intent and objective are factual questions for the trial court[.]'" (*People v. Coleman* (1989) 48 Cal.3d 112, 162 (*Coleman*); see also *People v. Cleveland* (2001) 87 Cal.App.4th 263, 268 (*Cleveland*) [sentencing court determines the defendant's intent and objective for purposes of section 654].) Furthermore, when a trial court sentences a defendant for two crimes, without staying execution of sentence for one, it implicitly finds the acts involved more than one objective. (*People v. Osband* (1996) 13 Cal.4th 622, 730-731 (*Osband*).)

A trial court's section 654 findings—express or implied—are subject to the substantial evidence standard of review. (*Osband, supra*, 13 Cal.4th at pp. 730-731;

5

*Coleman, supra*, 48 Cal.3d at p. 162.)  Thus, "'[w]e review the court's determination of [a defendant's] "separate intents" for sufficient evidence in a light most favorable to the judgment, and presume in support of the court's conclusion the existence of every fact the trier of fact could reasonably deduce from the evidence.'"  (*People v. Andra* (2007) 156 Cal.App.4th 638, 640-641.)

### B. Factual Background

Turning to the case before us, even before closing argument and the jury's verdicts, the trial court was aware there was an issue whether section 654 would apply to an arson conviction based on the evidence that had been adduced at trial.  The court told the prosecutor, "I think [your closing] argument [concerning arson] needs to be strictly limited to the burning of the pile of clothes, not the clothes [M.G. was wearing] *because otherwise you're going to have a 654 issue.*"[2]  (Italics added.)

Later, addressing section 654 in his sentencing brief, the prosecutor tried to argue that in committing the arson, defendant had separately lit the *baby's* clothes on fire.  As a result of this separate act and separate intent, he insisted, it was not necessary to stay sentencing on the arson under section 654.[3]  Defense counsel's sentencing brief argued the arson was "part and parcel" of the torture, mayhem, and domestic violence counts, and was the "method by which" those offenses "were carried out."

At the sentencing hearing, the court explained its reasoning for the sentence it imposed for the arson conviction.  First, as to why it decided to impose a *concurrent* sentence, as opposed to a *consecutive* sentence, it found that the torture and the arson

---

[2]  In his opening brief, defendant discusses what the prosecutor argued to the jury and how the jury was instructed.  For purposes of section 654, this is irrelevant; it is the trial court, not the jury, that determines whether section 654 applies.  (*Coleman, supra*, 48 Cal.3d at p. 162; *Cleveland, supra*, 87 Cal.App.4th at p. 268.)

[3]  The prosecutor did not attempt to reconcile this claim with the fact that his pleadings—and the jury's verdict form—refer to M.G. as the victim of the arson, not the baby.

counts occurred in close spatial and temporal proximity, and defendant poured the acetone on M.G. and the clothes at "roughly the same movement." "Furthermore, the court finds that [the torture and the arson] arose out of the same set of operative facts. And . . . it appears to the court that the crimes were both accomplished for the objective of controlling the victim."

When the court moved on to section 654, it found it was required to stay the mayhem and domestic violence counts, "because those crimes were based on the same conduct as [the torture count], [and] were necessarily incidental to the defendant's intent to commit the crime of torture." Notably, the court did not expressly address whether the arson count should or should not be stayed under section 654. As noted, when a trial court sentences a defendant for multiple crimes without suspending execution of sentence, the judge has implicitly found the acts involved more than one objective. (*Osband, supra*, 13 Cal.4th at pp. 730-731.) Thus, the question before us is whether this implied finding of more than one *intent* or *objective* under section 654 is supported by substantial evidence.

### C. Analysis and Application

"Arson, [is] a general intent crime, [and] requires only that a person possess the intent to burn (or cause to be burned) . . . [the] (property); it does not require an intent to do a further act or achieve a future consequence." (*People v. Booker* (2011) 51 Cal.4th 141, 177; *People v. Atkins* (2001) 25 Cal.4th 76, 87-89 [general intent requirement "ensures that the setting of the fire must be a deliberate and intentional act, as distinguished from an accidental or unintentional ignition or act of setting a fire"].)

On the other hand, torture and aggravated mayhem are specific intent crimes, each with a different requisite mental state. (See § 206 ["intent to cause cruel or extreme pain and suffering for the purpose of revenge, extortion, persuasion, or for any sadistic purpose"]; § 205 ["intentionally causes permanent disability or disfigurement of another human being or deprives a human being of a limb, organ, or member of his or her

7

body"].)  As regards "intents," therefore, these three offenses have three very distinct *mentes reae*, and defendant harbored three separate criminal intents.

As to "objectives," defendant argues, "[t]he only reasonable interpretation of the evidence here is that [defendant's] overriding objective in the burning incident was, as the jury implicitly found in convicting him of torture, to inflict pain and suffering on [M.G.] for his own sadistic pleasure, to punish her for what he perceived as her transgressions, and to persuade her to conform her life to his demands.  [Citations.]  The arson of property was incidental to this objective."

First, this argument is somewhat self-defeating because, as phrased, defendant identifies *three* distinct objectives, not *one*:  to *inflict pain* on M.G. for his own pleasure; to *punish* M.G. for her past misbehavior; and to *persuade* her to unerringly conform to his wishes in the future.  Moreover, even though all three of defendant's objectives fall under the more general "overriding" umbrella of defendant and M.G.'s entire toxic relationship, that does not resolve the section 654 question; it only begs it.

Second, defendant cites no authority for a rule providing that if it is possible to subsume multiple objectives under one overarching single objective, section 654 must apply; nor have we found any.  Indeed, if that were the rule, section 654 would apply to almost all instances of multiple offenses, because it is always possible to craft a sufficiently general "objective" to encompass all of a defendant's crimes and thereby render them "indivisible."  (Cf. *People v. Phung* (2018) 25 Cal.App.5th 741, 760 ["A defendant's criminal objective should not be defined too broadly and amorphously"].)  Indeed, "'[t]o accept such a broad, overriding intent and objective to preclude punishment for otherwise clearly separate offenses would violate [section 654's] purpose to insure that a defendant's punishment will be commensurate with his culpability.'"  (*People v. Britt* (2004) 32 Cal.4th 944, 953, disapproved on another ground in *People v. Correa, supra*, 54 Cal.4th 331.)

8

Defendant analogizes to *Neal*. Although superficially similar—it too involved arson and section 654—we find *Neal* distinguishable.

The full factual background of the *Neal* case is not found in the Supreme Court's opinion, but in the Court of Appeal's original opinion on direct appeal: "On the night of June 4, 1949, Mr. and Mrs. Raymond occupied a bed in their home in a room with a screened window. The foot of the bed was near the window which was open. About 4:15 a.m. Mr. Raymond was awakened by a dog jumping on his chest, scratching and growling. He saw a flame coming through the window. In a moment the clothes of Mr. and Mrs. Raymond, her hair, the bed, and the interior of the bedroom were afire. Mr. and Mrs. Raymond were severely burned. He was in a hospital eight weeks; she, seven weeks. [¶] The fire was of incendiary origin. Gasoline had been thrown through the window across the foot of the bed. The court could reasonably have inferred that a considerable amount of gasoline had been thrown through the window. The outside of the house was only slightly burned. The bedroom and the bed were badly burned. A garbage can which had been in the fire, containing a small amount of gasoline, was found on the ground about 10 feet from the bedroom window." (*People v. Neal* (1950) 97 Cal.App.2d 668, 670.)

The defendant had repeatedly threatened Mr. Raymond in the past, and had previously told him and other witnesses that a can of gasoline and a match would be a good way to get back at people. (*People v. Neal, supra*, 97 Cal.App.2d. at pp. 670-671.) After the fire, the defendant fled the county and changed his name. He returned a couple months later, looking for the Raymonds, with a five gallon can of gas on the floorboard of his car. When arrested a few days later, the five gallon can of gas was still in his car. He told police the Raymonds "were a bad bunch," and that "he had several run-ins with them and fights, and it was just a question of him or them." (*Id.* at pp. 671-672.) The defendant "was sentenced to state prison on each count, the sentences for attempt to

murder to run consecutively, the sentence for arson to run concurrently with the others." (*Id.* at p. 669.)

On subsequent habeas corpus review of a parole date issue, the Supreme Court revisited the defendant's sentence and concluded that because "the arson was *the means of perpetrating the crime of attempted murder*[*s*] . . . . The conviction for both arson and attempted murder violated [section 654], since the arson was merely incidental to the primary objective of killing [the victims]. [Defendant], therefore, can only be punished for the more serious offense, which is attempted murder." (*Neal, supra*, 55 Cal.2d. at p. 20, italics added.)[4]

The facts in the case before us are significantly different from those in *Neal*. Unlike the victims in *Neal*, who were burned by that defendant's deliberate setting their bed and bedroom afire—their "dwelling house"—with the intent to murder them, defendant's act that set fire to the clothing on the floor did not cause M.G.'s burns or inflict her pain; nor was it intended to. Rather, it was defendant's placing his lighter to M.G.'s acetone soaked pants that caused her the pain and disfiguring injuries he intended she suffer. Simply put, the separate and collateral arson of the pile of clothes on the floor was not "the means of perpetrating the crime[s]" of torture and aggravated mayhem. (*Neal, supra*, 55 Cal.2d at p. 20.)

The trial court could reasonably conclude defendant harbored divisible intents and objectives in committing separate offenses—torture and aggravated mayhem on the one hand, and the arson of M.G.'s and her daughter's clothing on the other. These

---

[4] In *Neal*, the defendant was convicted of violating then-section 447a, which read, "'Any person who wilfully [*sic*] and maliciously sets fire to or burns or causes to be burned . . . any *dwelling house* . . . shall be guilty of arson. . . .'" (*Neal, supra*, 55 Cal.2d at p. 23 (dis. opn. of Schauer, J.), italics added; see § 447a (repealed by Stats. 1979, c. 145, p. 338, § 1).) In contrast, defendant here was charged and convicted of violating section 451, subdivision (d), by "willfully, maliciously, and unlawfully set[ting] fire to, burn[ing], and caus[ing] to be burned the *personal property* of [M.G.]." (Italics added.)

10

crimes were not committed solely pursuant to a single objective. Rather, and unlike *Neal*, the arson of the clothing cannot be viewed as merely incidental to defendant's intent to torture M.G. and to cause her permanent disfiguring injuries. In essence, defendant set two fires: one that burned M.G.'s personal *property* lying on the floor, for one purpose; the other to intentionally inflict pain upon and disfigure M.G.'s *person*. The trial court found defendant's "objectives" in causing those two fires were different, even though they were related. Substantial evidence supports its determination defendant held multiple intents and objectives during his acetone fueled motel room malevolence.

2. *The One-Year Prison Prior Enhancement Must Be Stricken*

Defendant's prior prison conviction enhancement under section 667.5, subdivision (b) was based on a 2012 conviction for inflicting corporal injury on a spouse or cohabitant pursuant to section 273.5, subdivision (a). However, effective January 1, 2020, Senate Bill 136 (Stats. 2019, ch. 590, § 1) amended section 667.5, subdivision (b) and eliminated the enhancement for prison priors based on nonsexually violent offenses. As an amendment that ameliorated criminal punishment, Senate Bill 136 applies retroactively to cases like defendant's which were not final when the amendment took effect. (*In re Estrada* (1965) 63 Cal.2d 740, 745; *People v. Gastelum* (2020) 45 Cal.App.5th 757, 762, 772 [section 667.5, subdivision (b) no longer applies to a section 273.5, subdivision (a) prison prior].) Because defendant's prison prior offense was not sexually violent, the one-year enhancement imposed under section 667.5, subdivision (b) is unauthorized and must be stricken.

However, the trial court imposed a low term sentence on the great bodily injury enhancement, and a remand for resentencing is necessary because the court still has discretion to consider imposing a different sentence. (*People v. Cruz* (2020) 46 Cal.App.5th 715, 739; see *People v. Valenzuela* (2019) 7 Cal.5th 415, 424-425 [a trial court may "revisit all prior sentencing decisions when resentencing a defendant"]; *People v. Buycks* (2018) 5 Cal.5th 857, 893 ["the full resentencing rule"]; cf. *People v. Hill*

11

(1986) 185 Cal.App.3d 831, 834 ["Not limited to merely striking illegal portions, the trial court may reconsider all sentencing choices"].)

The parties agree this is the appropriate remedy. Thus, we "remand the matter to the trial court so that it may exercise its sentencing discretion anew, if and to the extent the court deems resentencing appropriate. We express no opinion concerning whether or how the court should exercise its sentencing discretion anew on remand, in light of this one-year reduction to defendant's sentence." (*People v. Cruz, supra*, 46 Cal.App.5th at p. 739.)

## DISPOSITION

The sentence is vacated. The trial court is ordered to strike the one-year prior prison commitment enhancement and to resentence defendant to a sentence no greater than his original sentence. Following resentencing, the court shall amend the abstract of judgment and forward a copy to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.


THOMPSON, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


ARONSON, J.

12