Filed 8/2/24  P. v. Vasquez CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B329637 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA128424) |
| v. | |
| SALVADOR VASQUEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, David C. Brougham, Judge.  Affirmed as modified.

Richard D. Miggins, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Nicholas J. Webster and Michael C. Keller, Deputy Attorneys General, for Plaintiff and Respondent.

# I.    INTRODUCTION

A jury convicted defendant Salvador Vasquez of second degree murder (Pen. Code[1], § 187, subd. (a), count 1), two counts of possession of a firearm by a felon (§ 29800, subd. (a)(1), counts 2 and 3), and one count of carrying a loaded firearm in public by a felon (§ 25850, subd. (a), count 4).  The jury also found true the allegation that defendant personally used a firearm during the commission of the murder.  (§ 12022.5, subd. (a).)  Following defendant's admission that he previously sustained a serious or violent felony conviction within the meaning of section 667, subdivision (d) and section 1171.12, subdivision (b), the trial court sentenced him to 39 years and 4 months to life in prison.

On appeal, defendant contends that the trial court failed to properly inquire about a juror's potential misconduct; made errors in its evidentiary rulings; and prejudicially failed to instruct the jury regarding the limited purpose of gang evidence. Finally, defendant contends that the court abused its discretion by failing to stay the sentence on either count 3 or 4 pursuant to section 654.

We will modify the judgment to stay the sentence on count 3.  As so modified, we affirm the judgment.

---

[1]    Further statutory references are to the Penal Code unless otherwise indicated.

# II.  BACKGROUND

## A.  *Trial*

### 1.  Prosecution

#### a.  June 22, 2021, Firearm Offenses

On June 22, 2021, Pomona Police Department Detective Alex Nguyen and his partner were on patrol in an unmarked vehicle when they observed a speeding car.  The officers turned on their lights and sirens and followed.  Defendant, who was the driver of the speeding car, initially tried to evade the patrol car by running red lights and stop signs for several blocks before stopping suddenly.  The detective then walked the path that had just been traveled by defendant and recovered a loaded magazine and a firearm.  When asked about the firearm, defendant admitted, "'Yes, I tossed it,'" and "'Let's get this over with.'" Later forensic analysis determined that defendant's DNA was on the gun.

#### b.  August 23, 2021, Murder and Possession of Firearm by Felon

On August 23, 2021, Los Angeles County Sheriff's Department Detective Brian Rex responded to the La Puente Motel and observed a car stopped in the center divider of the street.  The murder victim, Pedro Guerrero, was in the driver's seat of the car and a woman was in the passenger seat.  Guerrero had sustained a gunshot wound to his chest and was

3

unresponsive. The police did not recover any weapons from Guerrero, the woman, or the scene of the shooting.

Detective Eric Saavedra reviewed security video from the La Puente Motel and recognized defendant as the person depicted in the video. Saavedra had previously encountered defendant six times between May and July of 2021 and knew that he had a large letter tattooed on the back of his head, as well as tattoos on the left side of his neck and his left arm.

On August 25, 2021, Detective Nathan Abarca and his partner were on patrol in La Puente when they encountered defendant driving a Dodge Charger. Abarca knew that defendant was the subject of an arrest warrant and pursued the car. The deputies temporarily lost sight of defendant's vehicle but eventually located it parked on the street. Sheriff's deputies found defendant hiding under a van and arrested him.

Detective John Duncan, who was assigned to investigate Guerrero's death, compiled surveillance video from the La Puente Motel from the day of the shooting. The prosecution introduced the compilation video as evidence at trial.[2] Detective Duncan identified defendant as the shooter in the video. The shooter had a tattoo of the letter P on the back of his head, as well as tattoos on the left side of his neck and left arm. Those tattoos matched the tattoos that Detective Duncan observed on defendant following his arrest. The shooter in the video also had a mark on his left cheek, which matched a mark that Detective Duncan

---

[2]    The 15-second video shown to Saavedra was admitted as People's Exhibit 1B. The compilation video created by Duncan was marked as People's Exhibit 1A and was 11 minutes 43 seconds long. The exhibits are comprised of high quality video that clearly depict the shooter's face, build, clothing, and tattoos.

observed on defendant following defendant's arrest.  By the time of trial, defendant had obtained a tattoo that covered the mark.

During his testimony, the detective described certain portions of the video, which the prosecutor played to the jury. The video showed that when Guerrero drove into the parking lot, defendant was smoking a cigarette at the motel.  Guerrero then had an "animated" conversation with a woman in front of a motel room before he returned to his car and began driving away. Defendant subsequently made several movements with his hand towards his waistband and walked towards the passenger side of Guerrero's car as the car drove toward the driveway of the motel parking lot.  Defendant pulled out a firearm from his waistband as he approached Guerrero's car, which stopped at the edge of the driveway.  After defendant reached the vehicle, he spoke briefly with the car occupants, placed his left hand on the top door frame of the passenger window, stepped back, raised the gun, fired once into the car, and ran away.  Guerrero's car then rolled toward the center divider in the street.

Duncan recovered a cigarette butt from the location where the video depicted defendant dropping his cigarette.  Subsequent DNA testing indicated it contained defendant's DNA.

2.  Defense

Defendant testified and admitted that he shot Guerrero. He asserted, however, that he did so in self-defense.  On the day of the shooting, defendant went to the motel to "hang out" with some women who could be seen in the video.  Defendant had a firearm in his waistband for protection.  At the motel, defendant witnessed Guerrero speaking aggressively to defendant's friend.

5

Although defendant wished to leave the motel, he heard Guerrero yell "'What's up?'" at him aggressively. Defendant approached Guerrero's car with gun in hand and said, "'What's up?'" Guerrero then said, "'Who the fuck do you think you're looking at?'" And, when defendant responded that he did not know Guerrero, Guerrero replied, "'That's right. You don't know me. . . . I'll fucking smoke you.'" Defendant saw Guerrero raise something black in his hand. Believing the item to be a gun, defendant raised his gun and fired once, striking Guerrero.

During his direct examination, defendant admitted to having been previously convicted of attempted robbery and being a member of the La Puente criminal street gang.[3]

On cross-examination, defendant testified that the La Puente Motel was part of the La Puente gang's territory and gang members would hang out there. Defendant conceded that members from other gangs would not be allowed in his gang's territory.

B.     *Verdict and Sentence*

Following the jury's finding of guilt, defendant admitted that he had a prior serious or violent felony conviction within the meaning of the Three Strikes law. The trial court sentenced defendant to 39 years and 4 months to life, consisting of: for count 1, 15 years to life, doubled to 30 years to life because of one strike, plus 4 years for personal use of a firearm; for count 2, 8 months (one-third the middle term of 24 months), doubled to 16

---

[3]     As we explain below, prior to defendant's testimony, the trial court ruled that the prosecution could cross-examine defendant about his membership in the La Puente gang.

months for the one strike, to be served consecutively; for count 3, 2 years, doubled to 4 years for the one strike, to be served concurrently; and for count 4, the principal determinate term, 2 years, doubled to 4 years for the one strike, to be served consecutively.

## III.  DISCUSSION

### A.  *Juror Misconduct*

Defendant contends that the trial court prejudicially erred by failing to properly inquire into juror misconduct during trial.

### 1.  Background

On January 10, 2023, the parties delivered opening statements and the following witnesses testified:  Saavedra, Nguyen, and Abarca.  Rex then began his testimony.  Following the lunch break, and outside the presence of the other jurors, Juror No. 12 reported to the trial court that she had experienced feelings of anxiety in the morning.  She stated, "I just felt like it was kind of fogging my thoughts, I guess, to fully listen here because I'm trying to calm myself down on the inside.  [¶]  . . .  [¶] It was kind of interfering with things."  Juror No. 12 added that she took an antianxiety pill during the lunch break.

The trial court asked the juror, "How are you doing now?" to which the juror responded, "I'm doing okay now."

The trial court and the juror then engaged in the following exchange:

"The Court: Okay. So just, you'll let us know if there is any—

"Juror No. 12: Right. That's what I was going to ask. I kind of wanted to see what your recommendation was.

"The Court: Yes. Well, my recommendation is you continue to take care of yourself. Do you have a doctor you see?

"Juror No. 12: I do, typically, yes. I haven't in about six months because I've tried to go away from any of that.

"The Court: If at any point you believe it is going to interfere or it is interfering with your ability to do your jury duties, tell me.

"Juror No. 12: Okay. Perfect.

"The Court: And then we'll have a hearing."

Neither party raised an objection.

2.     Analysis

As our Supreme Court has explained: "Section 1089 provides in part: 'If at any time . . . a juror dies or becomes ill, or upon other good cause shown to the court is found to be unable to perform his or her duty, or if a juror requests a discharge and good cause appears therefor, the court may order the juror to be discharged . . . .' In construing this statute, we have held that '"[o]nce a trial court is put on notice that good cause to discharge a juror may exist, it is the court's duty 'to make whatever inquiry is reasonably necessary' to determine whether the juror should be discharged."' [Citations.] [¶] 'But not every incident involving a juror's conduct requires or warrants further investigation. "The decision whether to investigate the possibility of juror bias, incompetence, or misconduct—like the ultimate decision to retain

8

or discharge a juror—rests within the sound discretion of the trial court.'" [Citations.] "'[A] hearing is required only where the court possesses information which, if proven to be true, would constitute 'good cause' to doubt a juror's ability to perform his duties and would justify his removal from the case.'" [Citation.]" (*People v. Martinez* (2010) 47 Cal.4th 911, 941–942.)

Defendant contends that Juror No. 12's description of feeling "foggy" during the morning proceedings constituted an admission of potential misconduct and merited further investigation. As an initial matter, because defendant failed to object during trial, he has forfeited his argument on appeal. (See *People v. Williams* (2013) 58 Cal.4th 197, 289 [defendant forfeited claim regarding sleeping juror where he "neither objected to [the juror's] continued service nor requested a mistrial on the ground of juror misconduct"]; see also *People v. Holloway* (2004) 33 Cal.4th 96, 124 ["defendant forfeited this issue [of alleged juror misconduct] by failing to seek the juror's excusal or otherwise object to the court's course of action"].)

Even assuming, however, that defendant had not forfeited his argument on appeal, we would reject it on its merits. Juror No. 12 reported that after she felt foggy, she took antianxiety medication. She also agreed to notify the trial court if she believed her anxiety would interfere or had interfered with her ability to serve as a juror. She did not so notify the court. On this record, we conclude the court did not abuse its discretion when it declined to conduct further inquiry.[4]

---

[4] Because we find the trial court did not abuse its discretion, we also reject defendant's alternative argument that his counsel provided ineffective assistance by failing to object to the court's purportedly inadequate inquiry. (See *In re Long* (2020) 10

9

B.    *Detective Duncan's Testimony*

Defendant next argues that the trial court erred by allowing Detective Duncan to testify during the review of the compilation video from the motel, that defendant was the shooter.

1.    Background

At a pretrial hearing on motions in limine, the prosecutor moved to allow Detective Saavedra to testify, that prior to the shooting, he had several encounters with defendant and recognized defendant in the surveillance video from the La Puente motel. Defendant objected and argued that "police identification of [defendant] on the video" should be excluded at trial. The trial court overruled defendant's objection[5] and ruled that Saavedra could so testify, reasoning that anyone who was familiar with defendant could testify that he was the person depicted in the video.

Cal.5th 764, 773 [to demonstrate ineffective assistance of counsel, defendant must show prejudice, in other words, "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different'"].)

[5]    The Attorney General contends that defendant forfeited his argument on appeal by failing to "argu[e] that Duncan should be treated differently from Saavedra." We disagree. Defendant's objection was sufficiently broad to encompass video identification by the police in general.

2. <u>Analysis</u>

Defendant contends that the trial court prejudicially erred when it permitted Detective Duncan to testify that defendant was the person depicted in the compilation video because Duncan did not have prior familiarity with defendant. We review evidentiary rulings for an abuse of discretion. (*People v. Leon* (2015) 61 Cal.4th 569, 600 (*Leon*).)

We find no abuse of discretion. "[Duncan] was familiar with defendant's appearance around the time of the [murder]. Their contact began when defendant was arrested . . . . Questions about the extent of [Duncan's] familiarity with defendant's appearance went to the weight, not the admissibility, of his testimony." (*Leon, supra*, 61 Cal.4th at p. 601.)[6]

C. *Cross-Examination on Defendant's Gang Affiliation*

Defendant next contends the trial court prejudicially erred by allowing the prosecutor to cross-examine him about his gang affiliation.

---

[6] We note that defendant does not challenge on appeal Saavedra's identification of defendant in the 15-second video. And, Duncan testified that the compilation video depicted the same events as in the video shown to Saavedra, but from a different angle. Defendant did not object to this testimony. Thus, even assuming the trial court erred, any such error was harmless. (*People v. Fuiava* (2012) 53 Cal.4th 622, 671.)

11

1. <u>Background</u>

Prior to trial, the prosecutor made a motion in limine to introduce in its case-in-chief, evidence that defendant was a member of the La Puente criminal street gang. Then, at trial, the prosecutor explained that it sought to introduce Saavedra's testimony that he previously spoke to defendant "about gang activity and/or knows him as a gang member." The trial court denied the motion, ruling that the minimal relevance of the evidence was substantially outweighed by the danger of undue prejudice. (Evid. Code, § 352.)

Outside the presence of the jury, and prior to defendant's testimony, defense counsel moved to preclude the prosecution from cross-examining defendant about his gang affiliation. The prosecutor objected and argued that if defendant were to testify that he acted in self-defense, his motive for the crime would be "extremely relevant." The prosecutor noted that Guerrero was killed in La Puente gang territory. The trial court ruled that it would allow the cross-examination.

During closing argument, the prosecutor asserted, "[defendant] told us that outsiders, people that are not part of his gang shouldn't be in [the motel.]"

2. <u>Analysis</u>

"The People are generally entitled to introduce evidence of a defendant's gang affiliation and activity if it is relevant to the charged offense. [Citation.] 'Evidence of the defendant's gang affiliation—including evidence of the gang's territory, membership, signs, symbols, beliefs and practices, criminal

12

enterprises, rivalries, and the like—can help prove identity, motive, modus operandi, specific intent, means of applying force or fear, or other issues pertinent to guilt of the charged crime.' [Citation.]  Even when it is relevant, however, 'courts should carefully scrutinize evidence of a defendant's gang membership because such evidence "creates a risk the jury will improperly infer the defendant has a criminal disposition and is therefore guilty of the offense charged."'  [Citations.]  We review the trial court's ruling for abuse of discretion.  [Citations.]" (*People v. Chhoun* (2021) 11 Cal.5th 1, 31 (*Chhoun*).)

Here, defendant testified that he shot Guerrero in self-defense.  Evidence of defendant's gang affiliation therefore was probative of a contrary motive. (*Chhoun, supra*, 11 Cal.5th at p. 31.)  Moreover, the probative value of that evidence was not substantially outweighed by undue prejudice as evidence of defendant's gang membership was limited:  defendant was the only witness to testify about his gang membership, which consisted of testimony that he was a member of the La Puente criminal street gang; the La Puente Motel was part of the gang's territory; gang members would frequent the motel; people from other gangs were not permitted in defendant's gang's territory; and defendant did not know Guerrero or whether he was in a gang. (Cf. *People v. Duong* (2020) 10 Cal.5th 36, 65 [finding probative value not substantially outweighed by undue prejudice because, among other things, "[n]o gang expert testified, and there was no evidence of any other gang-related activity other than this shooting"].)  Accordingly, we find no abuse of discretion.

13

D.      *Jury Instruction on Gang Evidence*

Defendant next contends that the trial court erred by failing to instruct the jury with CALCRIM No. 1403, concerning the limited purpose of gang evidence.  Alternatively, defendant contends defense counsel was ineffective in failing to request the instruction.

A trial court has no sua sponte duty to give a limiting instruction on gang evidence.  (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1051 (*Hernandez*); Evid. Code, § 355 ["When evidence is admissible as to one party or for one purpose and is inadmissible as to another party or for another purpose, the court *upon request* shall restrict the evidence to its proper scope and instruct the jury accordingly" (italics added)].)  The trial court therefore did not err by failing to deliver the instruction.

As to defendant's ineffective assistance of counsel claim, we find it meritless.  "'To establish ineffective assistance, defendant bears the burden of showing, first, that counsel's performance was deficient, falling below an objective standard of reasonableness under prevailing professional norms.  Second, a defendant must establish that, absent counsel's error, it is reasonably probable that the verdict would have been more favorable to him.' [Citation.]  'If the record does not shed light on why counsel acted or failed to act in the challenged manner, we must reject the claim on appeal unless counsel was asked for and failed to provide a satisfactory explanation, or there simply can be no satisfactory explanation.' [Citation.]" (*Hernandez, supra*, 33 Cal.4th at pp. 1052–1053.)

"On this record, we cannot say that counsel [was] deficient for not requesting a limiting instruction.  'A reasonable attorney

14

may have tactically concluded that the risk of a limiting instruction . . . outweighed the questionable benefits such instruction would provide.' [Citations.]" (*Hernandez, supra*, 33 Cal.4th at p. 1053.) Here, a reasonable attorney could have concluded that it was unduly risky to highlight defendant's gang affiliation given the minimal evidence of that affiliation during trial. Accordingly, we find no ineffective assistance of counsel.

E.     *Stay of Count 3*

Finally, defendant contends the trial court abused its discretion by imposing a concurrent sentence on counts 3 and 4, when it should have stayed one of the sentences. The Attorney General agrees, as do we.

A person may be convicted of more than one crime for the same act, but section 654 proscribes multiple punishments for the same act. (§§ 654, 954; *People v. Correa* (2012) 54 Cal.4th 331, 337.) Here, defendant was convicted of possession of a firearm by a felon (count 3) and carrying a loaded firearm in public by a felon (count 4) for the same act committed on June 22, 2021. Defendant can only be punished once for this single incident. (See *People v. Jones* (2012) 54 Cal.4th 350, 357 ["a single possession or carrying of a single firearm on a single occasion may be punished only once under section 654"].) The proper "'procedure is to sentence defendant for each count and stay execution of sentence on certain of the convictions to which section 654 is applicable.' [Citations.]" (*Id.* at p. 353.)

As for the remedy, we agree with the Attorney General that remand is unnecessary. The punishment is the same for counts 3 and 4 (§ 18), and a remand would have no practical impact on

15

defendant's sentence.  We will therefore modify the judgment to stay the sentence on count 3.  (See *People v. Alford* (2010) 180 Cal.App.4th 1463, 1473 [exercising authority under section 1260 to modify judgment rather than remand as remedy for trial court's failure to impose and stay sentence].)

## IV. DISPOSITION

The judgment is modified to stay the sentence on count 3. The trial court is directed to prepare an amended and corrected abstract of judgment as described by this opinion and to forward a copy to the Department of Corrections and Rehabilitation. As so modified, the judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM, J.

We concur:

BAKER, Acting P. J.

LEE, J.*

---

* Judge of the San Bernardino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.