Filed 1/15/16  P. v. Duong CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>CUONG HONG DUONG,<br><br>  Defendant and Appellant. | G050528<br><br>(Super. Ct. No. 13WF1379)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Sheila F. Hanson, Judge.  Affirmed.

Athena Shudde, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Minh U. Le, Deputy Attorneys General, for Plaintiff and Respondent.

Cuong Hong Duong appeals from a judgment after a jury convicted him of attempted murder, robbery, and false imprisonment by violence. Relying on Penal Code section 654, Duong argues the trial court erred by failing to strike the punishment for robbery. We disagree and affirm the judgment.

FACTS

Namju Choi worked as a prostitute at a hotel, and Duong was a client. During their appointment, Duong entered her room, looked around, and asked to use the bathroom. He laid down on the bed where Choi could see a folded green belt inside his pocket. Choi asked Duong to pay her $120 upfront because it was his first appointment with her. Duong stood up, patted his clothes, and checked his pocket. Duong told her that he left his money in his car, and he left the room. The surveillance footage showed the following: Duong left the room, rode the elevator down to the ground floor, and immediately rode the elevator back up to Choi's floor; and he reached for the belt in his pocket and hid it behind his back as he approached her room.

As Choi took off her undergarments, Duong knocked on the door. Choi opened the door and when she walked away from him, Duong came from behind and put his belt around her neck. He wrapped the belt around Choi's neck a second time and pulled. Choi could only touch the outside of the belt because Duong had it pulled so tightly around her neck. Duong was so strong she could not struggle. Although Choi told Duong that she would give him all her money, he continued to strangle her until she became unconscious. When Choi regained consciousness, she was lying on the bed with a towel over her face. Choi crawled onto the floor and towards her luggage where she found her cell phone, but she was so startled, she could not make a telephone call. She looked through her luggage and noticed three of her credit cards and approximately $1,000 was missing. Choi went to the bathroom to check her face, which was "black,"

2

and she saw blood in her nose and ears. Choi eventually obtained help when a friend called her.

An information charged Duong with attempted murder (Pen. Code, §§ 664, subd. (a), 187, subd. (a), all further statutory references are to the Pen. Code) (count 1), first degree robbery (§§ 211, 212.5, subd. (a)) (count 2), and false imprisonment by violence (§§ 236, 237, subd. (a)) (count 3). As to counts 1, 2, and 3, the information alleged Duong personally used a deadly weapon (§ 12022, subd. (b)(1)), and personally inflicted great bodily injury (§ 12022.7, subd. (a)).

The jury convicted him of all the counts and found true all the allegations. The trial court sentenced Duong as follows: (1) count 1-life with the possibility of parole plus one year for personal use of a deadly weapon and three years for personal infliction of great bodily injury; and (2) count 2-middle term of four years.

Over defense counsel's objection, and after "struggl[ing]" with the issue, the trial court declined Duong's invitation to stay the sentence on count 2 because Duong had multiple objectives, a deliberate intent to murder and a separate and deliberate intent to rob. The court explained Duong had the belt wrapped around Choi's neck the entire time and could have effectuated the robbery at any time but instead he choked her until she was unconscious. The court opined Duong's "means to achieve [his] objective [was] so extreme" it was not incidental. Pursuant to section 654, the court imposed and stayed the sentences on count 2's accompanying enhancements and count 3 and its accompanying enhancements.

## DISCUSSION

Relying on section 654, Duong argues the trial court erred by failing to stay the sentence on count 2 because the attempted murder and robbery were one continuous course of conduct and he did not possess separate criminal objectives. Not so.

3

Section 654, subdivision (a), provides, in pertinent part, "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Section 654 is intended "to insure that a defendant's punishment will be commensurate with his [or her] culpability." (*People v. Perez* (1979) 23 Cal.3d 545, 552.) The statute bars multiple punishment for both a single act that violates more than one criminal statute and multiple acts, where those acts comprise an indivisible course of conduct incident to a single criminal objective and intent. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208; *Neal v. State of California* (1960) 55 Cal.2d 11, 19, overruled on other grounds in *People v. Correa* (2012) 54 Cal.4th 331, 337-338.) Conversely, where a defendant commits multiple criminal offenses during a single course of conduct, he or she may be separately punished for each offense he or she committed pursuant to a separate intent and objective. (*People v. Beamon* (1973) 8 Cal.3d 625, 637-639.)

Whether multiple convictions were part of an indivisible transaction is primarily a question of fact for the trial court. (*People v. Coleman* (1989) 48 Cal.3d 112, 162; *People v. Avalos* (1996) 47 Cal.App.4th 1569, 1583.) We review a challenge under section 654 for substantial evidence to support the trial court's determination. (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143 [trial court's findings not reversed if any substantial evidence to support them].) *People v. Nguyen* (1988) 204 Cal.App.3d 181 (*Nguyen*), and *People v. Cleveland* (2001) 87 Cal.App.4th 263 (*Cleveland*), are instructive.

In *Nguyen, supra,* 204 Cal.App.3d at page 190, defendant and his partner robbed a market and defendant's partner took the store clerk to the backroom. While defendant was at the store's cash register, his partner took the store clerk's valuables and forced him to lie on the floor. Once the store clerk was on the ground, defendant's partner shot him. (*Ibid*.) The *Nguyen* court held that under section 654, the crimes of

4

robbery and attempted murder should be sentenced separately: "This act [of attempted murder] constituted an example of gratuitous violence against a helpless and unresisting

victim which has traditionally been viewed as not 'incidental' to robbery for purposes of . . . section 654. [Citations.]" (*Nguyen, supra,* 204 Cal.App.3d at p 190.) The court explained: "[A]t some point the means to achieve an objective may become so extreme they can no longer be termed 'incidental' and must be considered to express a different and a more sinister goal than mere successful commission of the original crime." (*Id*. at p. 191.) The court concluded: "It is one thing to commit a criminal act in order to accomplish another; . . . section 654 applies there. But that section cannot, and should not, be stretched to cover gratuitous violence or other criminal acts far beyond those reasonably necessary to accomplish the original offense." (*Ibid*.)

In *Cleveland, supra,* 87 Cal.App.4th at pages 266-267, defendant was angry because an elderly man refused to give him money. He entered the man's apartment and beat him with a large piece of wood until the man became unconscious. A neighbor saw defendant walk out with the man's Walkman radio. The jury convicted defendant of attempted murder, robbery, and assault with a deadly weapon. (*Ibid*.) The *Cleveland* court held separate sentences could be imposed for the robbery and attempted murder of the same victim, quoting *Nguyen* with approval. (*Cleveland, supra,* 87 Cal.App.4th at p. 272, fn. omitted.) The court reasoned: "We do not agree with [defendant] that both crimes were committed pursuant to the intent to rob [the victim] . . . . As the trial court observed, the amount of force used in [robbing the victim] was far more than necessary to achieve one objective. [Defendant] repeatedly hit his 66-year-old feeble, unresisting victim on the head and body with a two-by-four board. [Defendant] struck [the victim] until the board broke and left him unconscious. While it is true that attempted murder can, under some circumstances, constitute the 'force' necessary to commit a robbery, here, it was not the necessary force." (*Id*. at pp. 271-272.)

5

Here, like in *Nguyen* and *Cleveland*, substantial evidence supported the trial court's conclusion Duong's strangulation of Choi exceeded that necessary to effectuate the robbery. After Doung wrapped the belt around Choi's neck and pulled so tightly Choi could only touch the outside of the belt, Choi told Duong that she would give him all her money. Had Duong ceased strangling Choi at this point and successfully completed the robbery his argument would be stronger. Yet Duong continued to strangle Choi until she was unconscious. There was no evidence Choi resisted or struggled. Needless to say, the natural reaction to being choked is to reach towards the neck area. Contrary to Duong's assertion otherwise, Choi did not pull the belt away from her neck. Choi testified Duong strangled her with such force and strength she could not struggle. Similar to *Nguyen* and *Cleveland*, Duong's conduct in continuing to strangle Choi, an act of gratuitous violence against a helpless victim, was so extreme the criminal objectives in committing the attempted murder were different than committing the robbery.

Duong's reliance on *People v. Nunez* (2012) 210 Cal.App.4th 625, is misplaced. In that case, defendant used a hammer to commit a carjacking of a formidable victim. (*Id*. at p. 628.) In agreeing with defendant section 654 prohibited multiple punishments for assault with a deadly weapon and carjacking, the *Nunez* court explained the hammer use and taking of the car were "contemporaneous if not simultaneous" and the hammer use "was not a 'gratuitous act of violence' or an 'afterthought.'" (*Id*. at p. 630.) As we explain above, Duong's continued strangulation of Choi, a helpless victim, after she agreed to give him all her money was a gratuitous act of violence unnecessary for completion of the robbery. Therefore, we conclude the trial court did not err in failing to stay execution of the sentence for count 2 pursuant to section 654.

6

DISPOSITION

The judgment is affirmed.


                                    O'LEARY, P. J.

WE CONCUR:


RYLAARSDAM, J.


MOORE, J.